**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| Gunvor SA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:18-cv-00934-LMB-MSN |
| | ) | |
| Kayablian, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ....................................................................................................................... 7

I.     The Complaint should be dismissed for lack of subject matter jurisdiction as foreign citizen Nemsss Petroleum is an indispensable party............................. 7

     A.    As a party to the Fuel Oil Contracts, Nemsss Petroleum has an interest in this action but an inability to protect that interest here .............. 8

     B.    Nemsss Petroleum is an indispensable party to this action to invalidate its contracts and extract payments made to it from its officers ................................................................................................. 10

II.    The Court should dismiss this action in favor of arbitration because Gunvor's claims are subject to a mandatory arbitration agreement .................... 12

     A.    Fourth Circuit precedent mandates an order compelling arbitration here................................................................................................... 13

     B.    Gunvor cannot evade its contractual obligation to arbitrate disputes by alleging fraudulent inducement of the Fuel Oil Contracts.................. 15

     C.    Gunvor cannot evade its contractual obligation to arbitrate by pleading against Nemsss's officers and employees instead of Nemsss Petroleum directly .................................................................. 16

III.    The Complaint does not state a claim because Gunvor's Fuel Oil Contracts bar Gunvor from asserting its claims ................................................................... 17

     A.    Dismissal is proper where the plaintiff's claims are barred by contract................................................................................................... 17

     B.    Exculpatory agreements are enforceable ................................................... 18

     C.    The Fuel Oil Contracts prohibit the claims Gunvor seeks to assert here................................................................................................... 19

     D.    The exculpatory and non-reliance clauses in the Fuel Oil Contracts preclude even the fraud and fraudulent inducement claims...................... 20

IV.    Gunvor's Complaint also fails to adequately plead its counts............................. 22

A.  Gunvor cannot assert a claim for conversion because the Fuel Oil
    Contracts exist ........................................................................................ 23

B.  Gunvor cannot assert a claim for unjust enrichment because the
    Fuel Oil Contracts exist ........................................................................ 24

C.  Gunvor cannot assert a claim for negligent misrepresentation,
    which does not exist under Virginia law and would be barred here
    by the economic loss rule ....................................................................... 24

D.  Gunvor's claim for civil conspiracy fails because Gunvor's attempt
    to convert a breach of contract action into a tort action fails ................... 25

E.  Gunvor fails to plausibly plead alter ego liability against Amira
    Group Company, LLC—largely because Gunvor has failed to
    plead against Amira Group Company, LLC ............................................ 26

CONCLUSION ................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Labor Ready, Inc.*,
303 F.3d 496 (4th Cir. 2002) ........................................................................................12, 13

*Am. Gen. Life & Acc. Ins. Co. v. Wood*,
429 F.3d 83 (4th Cir. 2005) ................................................................................................8

*Arnold v. Arnold Corp.-Printed Commc'ns for Business*,
920 F.2d 1269 (6th Cir. 1990) ..........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................22, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................23

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994) ....................................................................................25

*Blake Constr. Co. v. Alley*,
353 S.E.2d 724 (Va. 1987)................................................................................................25

*Bonzel v. Pfizer, Inc.*,
No. Civ.04–1401 ADM/SRN, 2004 WL 2475564 (D. Minn. Nov. 2, 2004),
*aff'd*, 439 F.3d 1358 (Fed. Cir. 2006) ..............................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................................................................................................15, 16

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
252 F.3d 707 (4th Cir. 2001) ......................................................................................12, 15

*Crawford v. Deutsche Bank AG*,
244 F. Supp. 2d 615 (E.D. Va. 2003) ...............................................................................25

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) ..........................................................................................11

*Design & Production, Inc. v. American Exhibitions, Inc.*,
820 F. Supp. 2d 727 (E.D. Va. 2011) ...............................................................................25

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
192 F. Supp. 3d 54 (D.D.C. 2016).....................................................................................11

*Discover Bank v. Vaden*,
489 F.3d 594 (4th Cir.2007) *rev'd on other grounds,* 556 U.S. 49, 129 S. Ct. 1262, 173 L.Ed.2d 206 (2009) ................................................................................................15

*Dragas Mgmt. Corp. v. Hanover Ins. Co.*,
798 F. Supp. 2d 766 (E.D. Va. 2011) .................................................................................18

*Factory Mutual Ins. Co. v. DLR Contracting, Inc.*,
No 3:04-CV-834, 2005 WL 2704502 (E.D. Va. Oct. 20, 2005)........................................23

*Firestone v. Wiley*,
485 F. Supp. 2d 694 (E.D. Va. 2007) .................................................................................25

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)...........................................................................................................12

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) .............................................................................................22

*Gerald M. Moore & Son, Inc. v. Drewry*,
251 Va. 277, 467 S.E.2d 811 (1996)..................................................................................23

*Hall v. Virginia*,
385 F.3d 421 (4th Cir. 2004) ...............................................................................................2

*Hawkins v. Fishbeck*,
301 F. Supp. 3d 650 (W.D. Va. 2017) ...............................................................................14

*Hoffman v. Daimler Trucks N.A., LLC*,
940 F. Supp. 2d 347 (W.D. Va. 2013) ...............................................................................15

*Home Buyers Warranty Corp. v. Hanna*,
750 F.3d 427 (4th Cir. 2014) ........................................................................................8, 10

*Income Tax School, Inc. v. Lopez, No.*,
2012 WL 3249547 (E.D. Va. Aug. 7, 2012)......................................................................27

*Informatics Applications Grp. v. Shkolnikov*,
836 F. Supp. 2d 400 (E.D. Va. 2011) ................................................................................26

*Irving v. PAE Gov. Servs., Inc.*,
249 F. Supp. 3d 826 (E.D. Va. 2017) ................................................................................17

*In re James River Coal Co.*,
360 B.R. 139 (Bankr. E.D. Va. 2007).................................................................................26

*Kocinec v. Public Storage, Inc.*,
489 F. Supp. 2d 555 (E.D. Va. 2007) ...........................................................................18, 19

*Lescs v. William R. Hughes, Inc.*,
    168 F.3d 482 (4th Cir. 1999) ...........................................................................24

*Levinson v. Massachusetts Mut. Life Ins. Co*,
    No. 4:06 CV 086, 2006 WL 3337419 (E.D. Va. Nov. 9, 2006) .............................23

*Linhart v. Lawson*,
    261 Va. 30, 540 S.E.2d 875 (2001)....................................................................20

*Long v. Silver*,
    248 F.3d 309 (4th Cir. 2001) ......................................................................14, 15

*Longwood Elastomers, Inc. v. Aeroquip Corp.*,
    165 F.3d 18 (4th Cir. 1998) .............................................................................24

*Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*,
    250 F. Supp. 3d 13 (E.D. Va. 2017) ..................................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (U.S. 1983).....................................................................................12

*Jared & Donna Murayama 1997 Tr. ex rel. Murayama v. NISC Holdings, LLC*,
    82 Va. Cir. 38 (2011), *aff'd sub nom. Jared & Donna Murayama 1997 Tr. v.*
    *NISC Holdings, LLC*, 284 Va. 234, 727 S.E.2d 80 (2012) ..................................8, 20

*U.S. ex rel. Nathan v. Takeda Pharms. N.A., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ...........................................................................23

*Nossen v. Hoy*,
    750 F. Supp. 740 (E.D. Va. 1990) ....................................................................24

*Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*,
    665 F.3d 96 (4th Cir. 2012) .............................................................................13

*Performance Food Grp. Co. v. Java Trading Co.*,
    No. CIV.A. 305CV447, 2005 WL 2456980 (E.D. Va. Oct. 5, 2005)......................16

*Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.*,
    974 F.2d 545 (4th Cir. 1992) ...........................................................................29

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)........................................................................................16

*Regency Photo & Video, Inc. v. Am. Online, Inc.*,
    214 F. Supp. 2d 568 (E.D. Va. 2002) ................................................................19

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)..........................................................................................12

*Shearson Lehman Hutton, Inc. v. Venners*,
  165 F.3d 912 (4th Cir. 1998) ............................................................27

*Slavchev v. Royal Caribbean Cruises, Ltd.*,
  559 F.3d 251 (4th Cir. 2009) ..............................................................9

*Smith v. Purell*,
  No. 1:11cv922, 2011 WL 6140868 (E.D. Va. Dec. 9, 2011) ...............18

*Taizhou Zhongneng Import & Export Co. v. Koutsobinas*,
  509 F. App'x 54 (2d Cir. 2013) ..........................................................28

*U.S. Bank Nat'l Assoc. v. Sofield*,
  No. 5:16-cv-00084-RLV-DSC, slip copy, 2017 WL 2569740 (W.D.N.C. Jun.
  12, 2017) .............................................................................................18

*VA C 12266 Jefferson, LLC v. Mattress Warehouse, Inc.*,
  No. 4:14cv34, 2014 WL 5311453 (E.D. Va. Oct. 16, 2014) ................27

*Walker v. Kelly*,
  589 F.3d 127 (4th Cir. 2009) ...............................................................2

*Wilson-McClain v. Specialized Loan Servicing, LLC*,
  No., 2016 WL 5662002 (E.D. Va. Sept. 29, 2016) ................................2

## Statutes

9 United States Code
  §§ 1-16 (Federal Arbitration Act) .......................................................12
  § 3 ......................................................................................................12
  § 4 ......................................................................................................12

## Rules and Regulations

Federal Rules of Civil Procedure
  Rule 12(b)(6) ...............................................................................18, 22
  Rule 19 ............................................................................................8, 9
  Rule 19(b) ..........................................................................................10
  Rule 19(b)(1) ......................................................................................10
  Rule 19(b)(2) ......................................................................................10
  Rule 19(b)(3) ......................................................................................10
  Rule 19(b)(4) ......................................................................................11

## Other Authorities

CHITTY ON CONTRACTS, vol. 1, § 7-144 (32d ed.) .......................................20

Halsbury's Laws of England, vol. 21, 1.(6)(i)(98) .......................................17

# INTRODUCTION

Swiss corporation Gunvor SA's ("Gunvor") Complaint is a transparent attempt to plead around the mandatory arbitration provision and limitations on liability that Gunvor itself imposed in a series of four contracts with non-party British Virgin Island corporation Nemsss Petroleum Ltd. ("Nemsss Petroleum") and to fabricate diversity jurisdiction by attacking the officers of Nemsss Petroleum instead of the actual contracting party.

It is undisputed that Nemsss Petroleum delivered more than $100,000,000 in Iraqi fuel oil to Gunvor pursuant to the parties' contracts. No one could legitimately dispute the arbitration agreement in each of those contracts, which mandates that "any controversy, dispute or claim whatsoever arising out of or in connection with this contract or the breach thereof" must be arbitrated. Nonetheless, Gunvor, a global commodities trading house, brings this lawsuit in federal court and against two Nemsss Petroleum officers in their personal capacity in a blatant attempt to use the federal courts as a cudgel in what is otherwise a run of the mill contract dispute.

In its attempt to evade its contractual obligations and to manufacture federal jurisdiction, foreign citizen Gunvor consciously and improperly relegated an indispensable party—foreign citizen Nemsss Petroleum—to non-party status, while falsely alleging that its four contracts with Nemsss Petroleum were fraudulently induced. Adding Nemsss Petroleum, as is required, would prevent complete diversity, and thus this Court would lack subject matter jurisdiction.

Likewise, the fact that Gunvor is overreaching in its attempt to keep this dispute out of arbitration and in the federal courts is evident in the poor quality of the allegations asserted by Gunvor. In addition to the inadequacy of Gunvor's allegations resulting in the failure to state a claim, its case is further barred by the terms of Gunvor's contracts and by Virginia law.

## FACTUAL BACKGROUND

Defendants Arman Kayablian and Lawrence Kayablian, both natural born U.S. citizens, *see* Complaint ("Compl.") ¶¶ 9-10, are directors and officers of Nemsss Petroleum Ltd., a British Virgin Islands corporation in the oil industry. Declaration of Lawrence Kayablian dated September 14, 2018, at ¶¶ 4-6 (attached hereto as **Exhibit A**) ("Kayablian Decl."). A copy of the certificate of good standing for Nemsss Petroleum is attached to the Kayablian Declaration as **Exhibit 1**.[1]

Plaintiff Gunvor SA ("Plaintiff" or "Gunvor") is a global commodities trading house that sources and physically trades crude oil and refined products from countries around the world. Compl. ¶ 1. Its principal place of business is on the Rue Du Rhône in Geneva, Switzerland. Compl. ¶ 8.

On February 29, 2016, Nemsss Petroleum entered into a contract to purchase Iraqi straight run fuel oil from Gulf Energy for Petroleum Services ("Gulf Energy"), which itself had entered into a contract to purchase the oil from the Iraq Oil Transport Company, an Iraqi state-owned oil company ("IOTC"). A copy of that contract is attached to the Kayablian Declaration as **Exhibit 2**.[2]

---

[1] Courts may take notice of public government documents on a 12(b)(6) motion. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (a court may consider public records in conjunction with a Rule 12(b)(6) motion without having to convert that motion into one for summary judgment); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (discussing that the court does not convert a Rule 12(b)(6) motion to dismiss into one for summary judgment where the court takes judicial notice of public records).

[2] Courts may consider documents, including contracts, referenced in the pleadings on a 12(b)(6) motion without converting the motion into summary judgment. *See Wilson-McClain v. Specialized Loan Servicing, LLC*, No. 3:15cv541, 2016 WL 5662002, at *2 (E.D. Va. Sept. 29, 2016) ("'a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed.'" (quoting *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006)) (alteration in original).

In Spring 2016, Hannam & Partners—a well-regarded investment bank based in London, which purports to have years of experience in the oil and gas and mining sectors and to have worked on some of the largest transactions in those sectors—worked to facilitate a transaction between Nemsss Petroleum and Gunvor. Kayablian Decl. ¶ 8; *see also* Compl. ¶ 15.

On April 7, 2016, Gunvor and Nemsss Petroleum entered into a contract for the purchase of Iraqi straight run fuel oil ("Fuel Oil Contract I"). Kayablian Decl. ¶ 10; *see also* Compl. ¶ 7 ("In sum, Gunvor agreed to enter into a series of one-off contracts…."). A copy of that contract is attached to the Kayablian Declaration as **Exhibit 3**.

Fuel Oil Contract I includes a dispute resolution clause that mandates any disputes "arising out of or in connection with this contract or the breach thereof" must be submitted to arbitration in London:

> THIS CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW. **ANY CONTROVERSY, DISPUTE OR CLAIM WHATSOEVER ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT OR THE BREACH THEREOF SHALL BE REFERRED TO ARBITRATION IN LONDON UNDER THE LCIA RULES BEFORE A PANEL OF THREE ARBITRATORS, ONE TO BE APPOINTED BY EACH PARTY AND ONE BY THE TWO ARBITRATORS SO APPOINTED.** FOR THE AVOIDANCE OF DOUBT THIS WILL NOT PREVENT EITHER PARTY FROM TAKING PROCEEDINGS IN ANY OTHER JURISDICTION TO OBTAIN SECURITY OR ANCILLARY RELIEF OR TO ENFORCE ANY ORDER OR AWARD.

Kayablian Decl., Ex. 3, § 14 (emphasis added). Fuel Oil Contract I likewise provides that it is governed by English law, and that any arbitration shall be conducted in accordance with the rules of the London Court of International Arbitration ("LCIA"). *Id.*

Fuel Oil Contract I includes integration language both in its opening:

> PLEASE NOTE, IF APPLICABLE, THIS BUYER'S CONTRACT (THE "CONTRACT") CANCELS AND SUPERSEDES ANY

> BROKER   CORRESPONDENCE   IN   RELATION   TO   THIS
> CONTRACT.

Kayablian Decl. Ex.3, at pg. 1, and in an Entire Agreement clause:

> THE   CONTRACT   CONTAINS   THE   ENTIRE   AGREEMENT
> BETWEEN THE PARTIES AND SUPERSEDES ALL PREVIOUS
> NEGOTIATIONS,   REPRESENTATIONS,   AGREEMENTS   OR
> COMMITMENTS WITH REGARD TO ITS SUBJECT MATTER.
>
> **EACH PARTY ACKNOWLEDGES THAT IN ENTERING INTO
> THIS   CONTRACT   IT   HAS   NOT   RELIED   ON   ANY
> REPRESENTATIONS**,   WARRANTIES,   STATEMENTS   OR
> UNDERTAKINGS EXCEPT THOSE WHICH ARE EXPRESSLY SET
> OUT HEREIN….

Kayablian Decl., Ex. 3, § 16 (emphasis added). Fuel Oil Contract I further expressly bars tort

claims and limits the parties' remedies to breach of the express terms of the contract:

> …EACH PARTY FURTHER ACKNOWLEDGES THAT IT **WILL
> ONLY BE ENTITLED TO REMEDIES IN RESPECT OF
> BREACH OF THE EXPRESS TERMS OF THE CONTRACT** AND
> **WILL   NOT   BE   LIABLE   IN   TORT** OR   UNDER   ANY
> COLLATERAL CONTRACT OR WARRANTY IN RESPECT OF
> ANY REPRESENTATIONS, WARRANTIES, STATEMENTS OR
> UNDERTAKINGS WHICH MAY HAVE BEEN PRIOR TO THE
> CONTRACT BEING ENTERED INTO.
>
> THIS CONTRACT IS NOT INTENDED TO GIVE ANY THIRD
> PARTY THE RIGHT TO ENFORCE ANY OF ITS TERMS.

*Id.* (emphasis added).

Fuel Oil Contract I provides an additional limitation of liability at Clause 17, barring

indirect and special damages:

> NEITHER THE SELLER NOR THE BUYER SHALL BE LIABLE,
> WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR ANY
> INDIRECT, CONSEQUENTIAL OR SPECIAL LOSSES, DAMAGES
> OR EXPENSES OF ANY KIND DIRECTLY OR INDIRECTLY
> ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE
> PERFORMANCE OF THIS CONTRACT.

*Id.* § 17.

Fuel Oil Contract I also includes a Force Majeure clause, which provides:

> NEITHER BUYER NOR SELLER WILL BE LIABLE FOR DAMAGES OR OTHERWISE FOR ANY FAILURE OR DELAY IN PERFORMANCE OF ANY OBLIGATION HEREUNDER OTHER THAN ANY OBLIGATION TO MAKE PAYMENT, WHERE SUCH FAILURE OR DELAY IS CAUSED BY FORCE MAJEURE, BEING ANY EVENT OR OCCURRENCE OR CIRCUMSTANCE REASONABLY BEYOND THE CONTROL OF THAT PARTY, INCLUDING… **RESTRICTIONS IMPOSED BY ANY GOVERNMENT AUTHORITY OR PERSON PURPORTING TO ACT THEREFORE**….

Kayablian Decl., Ex. 3, § 13 (emphasis added).

Fuel Oil Contract I includes an Annex, dated April 8, 2016, that provides for Gunvor to make a prepayment to Nemsss Petroleum of $3,000,000. Kayablian Decl., Ex.3, Annexe No. 1.

Also on April 7, 2016, Gunvor and Nemsss Petroleum entered into a second contract for the purchase of Iraqi straight run fuel oil ("Fuel Oil Contract II"). Kayablian Decl. ¶ 12. A copy of Fuel Oil Contract II is attached to the Kayablian Declaration as **Exhibit 4**. As is true of Fuel Oil Contract I, Fuel Oil Contract II includes an integration clause, a force majeure clause, a prohibition on tort claims, and an identical dispute resolution clause, mandating that all disputes "arising out of or in connection with this contract of the breach thereof" be submitted to arbitration in London, under LCIA rules, under English law. Fuel Oil Contract II includes an Annex dated May 8, 2016, that provides for Gunvor to make a prepayment to Nemsss Petroleum of $6,000,000. Kayablian Decl., Ex. 4.

On or about August 10, 2016, Gunvor paid Nemsss Petroleum $4,000,000 "for logistical operations *in connection with* the purchase of fuel oil from IOTC." Compl. at 23, n.3 (emphasis added); Kayablian Decl. ¶ 14.

On September 14, 2016, Gunvor and Nemsss Petroleum entered into a third contract for the purchase of Iraqi straight run fuel oil ("Fuel Oil Contract III"). Kayablian Decl. ¶ 15. A copy

of Fuel Oil Contract III is attached to the Kayablian Declaration as **Exhibit 5**. As is true of Fuel Oil Contract I and Fuel Oil Contract II, Fuel Oil Contract III includes an integration clause, a force majeure clause, a prohibition on tort claims, and an identical dispute resolution clause, mandating that all disputes "arising out of or in connection with this contract of the breach thereof" be submitted to arbitration in London, under LCIA rules, under English law. Fuel Oil Contract III includes an Annex dated September 14, 2016, that provides for Gunvor to make a prepayment to Nemsss Petroleum of $12,000,000. Kayablian Decl. ¶ 16, Ex. 5.

On October 28, 2016, Gunvor and Nemsss Petroleum entered into a fourth contract for the purchase of Iraqi straight run fuel oil ("Fuel Oil Contract IV"). Kayablian Decl. ¶ 17. A copy of Fuel Oil Contract IV is attached to the Kayablian Declaration as **Exhibit 6**. As is true of Fuel Oil Contract I, Fuel Oil Contract II, and Fuel Oil Contract III, Fuel Oil Contract IV includes an integration clause, a force majeure clause, a prohibition on tort claims, and an identical dispute resolution clause, mandating that all disputes "arising out of or in connection with this contract or the breach thereof" be submitted to arbitration in London, under LCIA rules, under English law. Fuel Oil Contract IV includes an Annex dated October 31, 2016, that provides for Gunvor to make a prepayment to Nemsss Petroleum of $3,000,000. Kayablian Decl. ¶ 18, Ex. 6.

Notably, each of these Fuel Oil Contracts was drafted solely by Gunvor and provided by Gunvor to Nemsss Petroleum. Gunvor permitted Nemsss Petroleum the opportunity to negotiate only minor changes. Kayablian Decl. ¶ 19. Specifically, Gunvor drafted all of the dispute resolution, integration, non-reliance and limitation of liability provisions (Sections 14, 16, and 17). *Id.*

While Gunvor alleges it should have received more straight run fuel oil under the Fuel Oil Contracts, Gunvor admits in its Complaint that Nemsss Petroleum delivered more than

$100,000,000 USD worth of Iraqi straight run fuel oil to Gunvor pursuant to the Fuel Oil Contracts. *See e.g.,* Compl. ¶ 93.

Gunvor and Nemsss Petroleum continued to work together until Gunvor abruptly ended the business relationship in May 2017. Kayablian Decl. ¶ 21. Representatives of the two companies exchanged a series of contentious letters before Gunvor abruptly filed the instant lawsuit against the two principals of Nemsss Petroleum. *Id.*

At no time did Gunvor request to arbitrate the claims at issue in this lawsuit. Kayablian Decl. ¶ 22.

At no time did Nemsss Petroleum waive its right to arbitrate, which right arises from the contracts Gunvor drafted and both parties agreed to and signed. Kayablian Decl. ¶ 23.

## ARGUMENT

Gunvor's Complaint suffers from the natural consequence of its desperate effort to avoid the terms of its own contracts. First, Gunvor has failed to join Nemsss Petroleum, which is an indispensable party here because it is Gunvor's contracts with Nemsss Petroleum that the Complaint attacks in the fraudulent inducement and other counts. Second, Gunvor cannot evade its contractual obligation to arbitrate these claims. Third, Gunvor's claims are barred by its own Fuel Oil Contracts, which expressly bar tort claims. Fourth, Gunvor's Complaint otherwise fails to properly plead, and its counts are prohibited by law.

For these reasons, the Complaint should be dismissed in its entirety.

## I.    The Complaint should be dismissed for lack of subject matter jurisdiction as foreign citizen Nemsss Petroleum is an indispensable party.

The Complaint should be dismissed for lack of subject matter jurisdiction because Nemsss Petroleum, a British Virgin Islands entity, is an indispensable party whose presence would destroy diversity jurisdiction.

7

Fed. R. Civ. P. 19 "sets forth a two-step inquiry for courts to determine whether a party is 'necessary' and 'indispensable.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014); *accord Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). First, the Court must determine "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Home Buyers*, 750 F.3d at 433 (quoting *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir.1999)). Second, if the party is necessary but would destroy diversity jurisdiction, "the court must decide under Rule 19(b) 'whether the proceeding can continue in that party's absence.'" *Id.* These "[d]ecisions must be made pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it." *Id.* (internal citations and quotation marks omitted).

This analysis demonstrates that Nemsss Petroleum is an indispensable party.

**A.     As a party to the Fuel Oil Contracts, Nemsss Petroleum has an interest in this action but an inability to protect that interest here**

First, among the parties deemed "necessary" is a party who "claim[] an interest relating to the subject of the action' and its absence would… conflict with its 'ability to protect the interest.'" *Id.* at 434 (quoting Fed. R. Civ. P. 19(a)(1)(B)(i)).

Here, Gunvor's Complaint attacks the validity of Nemsss Petroleum's contracts and deprives Nemsss Petroleum of its contractual right to arbitrate disputes arising from the Fuel Oil Contracts.

First, Count II alleges that Gunvor was fraudulently induced to enter into the Fuel Oil Contracts with Nemsss Petroleum. If Gunvor were to prevail and demonstrate that it was fraudulently induced to enter the Fuel Oil Contracts, one result would be that the Fuel Oil Contracts would be voidable at Gunvor's election. *See Jared & Donna Murayama 1997 Tr. ex*

*rel. Murayama v. NISC Holdings, LLC,* 82 Va. Cir. 38, 2011 WL 7575011, at *3 (Feb. 14, 2011), *aff'd sub nom., Jared & Donna Murayama 1997 Tr. v. NISC Holdings, LLC,* 284 Va. 234, 727 S.E.2d 80 (2012) ("It is a well settled principle of Virginia law that a fraudulently induced contract, compromise, or settlement is voidable.").

Second, the remaining counts seek to extract from Nemsss Petroleum officers either $24 million in contract payments made to Nemsss Petroleum or $24 million in contract payments and additional damages Gunvor alleges it incurred through Nemsss Petroleum's performance under those contracts. By bringing these claims for damages arising from the Fuel Oil Contracts in this Court without Nemsss Petroleum, Gunvor denies Nemsss Petroleum its contractual dispute resolution and limitation of liability rights and denies it the opportunity to vindicate its reputation. Gunvor's Complaint seeks findings that Nemsss Petroleum failed to properly perform the Fuel Oil Contracts, causing Gunvor to incur "delay costs," *see, e.g.,* Compl. ¶¶ 96, 102, 127, 131, and further seeks to extract payments Gunvor made to Nemsss Petroleum pursuant to the Fuel Oil Contracts, *see id.* ¶ 7.

All of the above demonstrates Nemsss Petroleum's "interest relating to the action" and that its absence would "conflict with its ability to protect that interest," and is thus a necessary party for purposes of Rule 19.

But Nemsss Petroleum is a BVI corporation and Gunvor is a Swiss corporation—both are citizens of a foreign state for diversity purposes. *See Slavchev v. Royal Caribbean Cruises, Ltd.,* 559 F.3d 251, 254 (4th Cir. 2009). The joinder of Nemsss Petroleum to the action would prevent the complete diversity of the parties necessary to maintain diversity jurisdiction, *id.,* the sole basis Gunvor has asserted for subject matter jurisdiction here, Compl. ¶ 17.

**B.** **Nemsss Petroleum is an indispensable party to this action to invalidate its contracts and extract payments made to it from its officers**

Since Nemsss Petroleum is a necessary party but one that would prevent complete diversity, it is necessary for the Court to confirm that Nemsss Petroleum is an "indispensable" party. *See Home Buyers*, 750 F.3d at 435. A consideration of Rule 19(b)'s factors demonstrate that, "in equity and good conscience," Nemsss Petroleum is here an indispensable party and this action should be dismissed for lack of subject matter jurisdiction.

First, as discussed above, "a judgment rendered in [Nemsss Petroleum]'s absence" would greatly prejudice it. *See* Fed. R. Civ. P. 19(b)(1). The best example is that the potential enforceability and invalidity of Nemsss Petroleum's contracts—contracts that govern more than $100,000,000 in transactions—are being called into question. Nemsss Petroleum is also being deprived of its contractual right to have disputes "arising out of or in connection with" the Fuel Oil Contracts decided in arbitration.

Second, this prejudice cannot be lessened by protective provisions, shaping of the relief, or other protective measures. *See* Fed. R. Civ. P. 19(b)(2). The heart of Gunvor's proposed action is a dispute about the Fuel Oil Contracts it entered into with Nemsss Petroleum—subject to an arbitration agreement and other contractual limitations—that Gunvor instead is pursuing against Nemsss Petroleum officers.

Third, in the absence of Nemsss Petroleum, the resulting judgment in this matter would not be adequate, *see* Fed. R. Civ. P. 19(b)(3), a factor which focuses on "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Home Buyers*, 750 F.3d at 436 (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). Depending on how this action was decided, Nemsss Petroleum may face indemnification actions from its officers. Gunvor's Complaint also accuses—without formally or

adequately alleging[3]—Nemsss Petroleum of being an alter ego of other entities and persons without permitting resolution of the question in Nemsss Petroleum's absence. And Nemsss Petroleum will still need to bring a separate action in any effort to vindicate its interests against Gunvor. In contrast, were Gunvor to bring its contract action against Nemsss Petroleum pursuant to the arbitration agreement in the Fuel Oil Contracts, the resulting decision of whether or not Nemsss Petroleum breached the Fuel Oil Contracts necessarily also decides all issues here.

Fourth, for the same reasons, Gunvor would retain an adequate remedy if this action is dismissed for nonjoinder. *See* Fed. R. Civ. P. 19(b)(4). After dismissal, Gunvor would retain the right to seek the prepayments and any damages it believes it is owed as a result of Nemsss Petroleum's alleged failure to perform under the Fuel Oil Contracts in the arbitration to which Gunvor agreed.

Moreover, since Gunvor contracted with Nemsss Petroleum this is not a surprising result. "[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002); *accord Detroit Int'l Bridge Co. v. Gov't of Canada*, 192 F. Supp. 3d 54, 68 (D.D.C. 2016); *Bonzel v. Pfizer, Inc.*, No. Civ.04–1401 ADM/SRN, 2004 WL 2475564, at *6 (D. Minn. Nov. 2, 2004), *aff'd*, 439 F.3d 1358 (Fed. Cir. 2006).  Gunvor's litigation is seeking to do exactly that, to decimate the Fuel Oil Contracts by extracting the prepayments made pursuant to those contracts and purported delay damages allegedly incurred during the performance of those contracts, while making the contracts

---

[3] *See, e.g.,* Compl. ¶ 12 ("Upon information and belief, Nemsss is a single-purpose entity owned in whole or in significant part by Defendants Lawrence and Arman, and was created solely as an instrument to perpetrate a fraud on Gunvor.").

themselves voidable, and depriving Nemsss Petroleum of its contractual dispute resolution and limitation of liability rights.

Because Nemsss Petroleum is an indispensable party, and its joinder would destroy diversity, this action should be dismissed for lack of subject matter jurisdiction.

## II.      The Court should dismiss this action in favor of arbitration because Gunvor's claims are subject to a mandatory arbitration agreement

The Court should dismiss this action in favor of arbitration because all of the claims asserted here are subject to a mandatory agreement to arbitrate.

Agreements to arbitrate are enforceable. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (U.S. 1983) (quoting 9 U.S.C. § 2). The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Id.* (citations omitted); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) ("Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)).

When a claimant has agreed to arbitrate, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, requires the Court to enforce the agreement to arbitrate upon application of either party. *See* 9 U.S.C. §§ 3-4. The mandate upon the Court includes staying the referable proceedings before it and issuing an order directing the arbitration proceed as provided by the parties' agreement. *See id.; Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("A

district court therefore has no choice but to grant a motion to compel arbitration where a valid

arbitration agreement exists and the issues in a case fall within its purview.").

> **A.      Fourth Circuit precedent mandates an order compelling arbitration here**

The Fourth Circuit mandates the issuance of an order compelling arbitration where the

movant demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement
> that includes an arbitration provision which purports to cover the dispute,
> (3) the relationship of the transaction, which is evidenced by the
> agreement, to interstate or foreign commerce, and (4) the failure, neglect
> or refusal of the [party] to arbitrate the dispute.

*Adkins*, 303 F.3d at 500-01.

Moreover, in light of the "liberal federal policy favoring arbitration agreements," *id.* at

500 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)), the

analysis is presumed to result in referring the dispute to arbitration.  The FAA creates a

"presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute.'" *Peabody Holding Co. v.*

*United Mine Workers of Am., Int'l Union*, 665 F.3d 96,104 (4th Cir. 2012) (quoting *AT & T*

*Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

Here, first, the fact of this litigation is proof of the existence of a dispute between the

parties.

Second, written agreements exist with broad arbitration provisions, sufficient to cover all

of the claims Gunvor alleges in its Complaint. Each of the Fuel Oil Contracts include identical

arbitration agreements that state:

> THIS CONTRACT SHALL BE GOVERNED BY AND CONSTRUED
> IN ACCORDANCE WITH ENGLISH LAW. **ANY CONTROVERSY,**
> **DISPUTE OR CLAIM WHATSOEVER ARISING OUT OF OR IN**

> **CONNECTION WITH THIS CONTRACT OR THE BREACH THEREOF SHALL BE REFERRED TO ARBITRATION IN LONDON UNDER THE LCIA RULES BEFORE A PANEL OF THREE ARBITRATORS, ONE TO BE APPOINTED BY EACH PARTY AND ONE BY THE TWO ARBITRATORS SO APPOINTED.** FOR THE AVOIDANCE OF DOUBT THIS WILL NOT PREVENT EITHER PARTY FROM TAKING PROCEEDINGS IN ANY OTHER JURISDICTION TO OBTAIN SECURITY OR ANCILLARY RELIEF OR TO ENFORCE ANY ORDER OR AWARD.

Kayablian Decl., Exs. 3-6, § 14 (emphasis added). The "[a]ny controversy, dispute or claim whatsoever arising out of or in connection with this contract or the breach thereof" language of this arbitration agreement is both undeniably broad, but also nearly identical to language held in this Circuit to constitute a "broad agreement." *See, e.g., Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) ("any and all disputes… arising out of or in connection with this Agreement"); *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 656 (W.D. Va. 2017) ("[A]ny controversy, disagreement, or dispute arising out of or related to this Agreement, the interpretation of any of the provisions hereof, or the action or inaction of a party to this Agreement…").

That Gunvor entered into a broad arbitration agreement is significant because "a broadly-worded arbitration clause applies" even to those "disputes that do not arise under the governing contract," so long as "a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Long*, 248 F.3d at 316. Gunvor cannot plausibly argue that its claims do not arise under the governing Fuel Oil Contracts, as it affirmatively pleads that it made the payments it is now seeking as damages as a result of the Fuel Oil Contracts. And it would be frivolous for Gunvor to argue that there is not a significant relationship between its claims and the Fuel Oil Contracts, as one of those claims is that Guvnor was fraudulently induced to enter into those contracts and the others are directed to payments

made pursuant to those contracts and the performance of the obligations imposed by those contracts.[4]

Third, as the Fuel Oil Contracts concern the purchase and delivery of fuel oil from Iraq and are contracts between two foreign citizens, a BVI and a Swiss corporation, the transactions governed by the Fuel Oil Contracts demonstrably involve foreign commerce.

Fourth, Gunvor's filing of this litigation evinces its strategy to circumvent arbitration of the dispute. *See Discover Bank v. Vaden,* 489 F.3d 594, 607 n. 20 (4th Cir.2007) *rev'd on other grounds,* 556 U.S. 49, 129 S. Ct. 1262, 173 L.Ed.2d 206 (2009) ("[A]n action to compel arbitration is proper when the party against whom the motion to compel is made has commenced litigation that is the subject matter of the parties' arbitration agreement.").

As all four requirements are met, Gunvor should be ordered to comply with its contractual obligation to arbitrate these claims.

**B.**    **Gunvor cannot evade its contractual obligation to arbitrate disputes by alleging fraudulent inducement of the Fuel Oil Contracts**

Gunvor's fraudulent inducement allegations do not change the above analysis because Gunvor has alleged it was fraudulently induced to enter into the Fuel Oil Contracts as a whole, not the arbitration clause within those contracts specifically. Challenges to arbitration agreements "can be divided into two types": (1) challenges specifically to the agreement to arbitrate and (2) challenges to the "contract as a whole." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440,

---

[4] Even were there some question whether Gunvor's claims fall within the scope of the arbitration agreement, which there is not, the "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Long,* 248 F.3d at 316 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809, 812 (4th Cir.1989)). Further, "[A]ny doubts in the interpretation of a contract must be resolved against the drafter." *Choice Hotels Int'l,* 252 F.3d at 711; *see also Hoffman v. Daimler Trucks N. Am., LLC,* 940 F. Supp. 2d 347, 359 (W.D. Va. 2013) ("'In the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement.'" (quoting *Martin & Martin, Inc. v. Bradley Enters. Inc.,* 504 S.E.2d 849, 851 (Va. 1998)).

444 (2006). Where, as here, the challenge is of the second type—to the validity of the contract as a whole—the FAA mandates referral of the matter to arbitration, invalidity allegations notwithstanding. *Id.* at 445. The governing rationale is:

> [I]f the claim is fraud in the inducement of the arbitration clause itself— an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). And this rule applies even to allegations that the plaintiff was fraudulently induced to enter the contract within which the agreement to arbitrate is found: *Prima Paint* applied this rule in a case where the plaintiff alleged it had been fraudulently induced to enter the contract as a whole. *Prima Paint*, 388 U.S. at 404; *see also Performance Food Grp. Co. v. Java Trading Co*., No. CIV.A. 305CV447, 2005 WL 2456980, at *3 (E.D. Va. Oct. 5, 2005) ("[H]ad [the plaintiff] asserted fraudulent inducement of the dispute resolution clause itself, this Court would be able to resolve it. This is not the case here.").

Gunvor has alleged it was fraudulently induced to enter the Fuel Oil Contracts as a whole; Gunvor has not alleged it was fraudulently induced to enter specifically into the arbitration agreements within the Fuel Oil Contracts. Nor could Gunvor plausibly so allege—the Fuel Oil Contracts were drafted by Gunvor, and Gunvor chose to include the arbitration clauses in the contracts when it proposed them to Nemsss Petroleum.

### C.    Gunvor cannot evade its contractual obligation to arbitrate by pleading against Nemsss's officers and employees instead of Nemsss Petroleum directly

Finally, Gunvor cannot evade its contractual obligations to arbitrate by pleading them against individual Nemsss employees and officers instead of properly bringing its claims against Nemsss itself in arbitration. "[I]t is 'well-established' in the Fourth Circuit that 'in an appropriate

case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.'" *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 23 (E.D. Va. 2017). This arises from the "blackletter law that '[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.'" *Id.* (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121 (3d Cir. 1993)). Thus, Arman Kayablian and Lawrence Kayablian as the Chief Operations Officer and Chief Executive Officer, respectively, of Nemsss Petroleum are entitled to invoke the arbitration clause in the Fuel Oil Contracts.

Likewise, given that Gunvor's only allegations against Amira Group Company is that it is the alter ego of Arman Kayablian and Lawrence Kayablian, one of two things is true: Gunvor's claim is false or Amira Group Company is entitled to invoke the arbitration agreement to the same extent as Arman Kayablian and Lawrence Kayablian.

### III.    The Complaint does not state a claim because Gunvor's Fuel Oil Contracts bar Gunvor from asserting its claims

Gunvor's action is further barred by the exculpatory provisions of the Fuel Oil Contracts. Virginia courts routinely enforce exculpatory provisions and invoke them and non-reliance provisions to resolve allegations of even intentional torts such as fraudulent inducement at the pleading stage.

#### A.    Dismissal is proper where the plaintiff's claims are barred by contract

Claims barred by the express contract of the parties cannot meet the necessary pleading standard, as they fail to state a claim upon which relief can be granted.

Contracts are enforceable where there is "mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Irving v. PAE Gov't Servs., Inc.*, 249 F. Supp. 3d 826, 837 (E.D. Va. 2017) (citations and internal quotation marks omitted); *see also* Halsbury's

Laws of England, vol. 21, 1.(6)(i)(98) "The essentials of a contract" (2016 ed.) (English law) ("[T]here is no rule of common law entitling a party to repudiate contractual terms because they are burdensome."). Courts will construe a contract according to its plain meaning where the terms in the contract are clear and unambiguous. *Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766, 772-73 (E.D. Va. 2011). In construing contracts, courts do not add terms not included by the parties. *Id.* That is, courts construe contracts "strictly to effectuate the intentions of the parties, giving terms their plain meaning, and declining to read in an ambiguity or meaning the parties did not intend." *Id.* at 773.

As a result, courts dismiss for failure to state a claim upon which relief can be granted claims barred by an express contract between parties. *See Smith v. Purell*, No. 1:11cv922 (JCC/IDD), 2011 WL 6140868, at *6-*7 (E.D. Va. Dec. 9, 2011) (granting 12(b)(6) motion to dismiss where claims barred by Settlement Agreement); *U.S. Bank Nat'l Assoc. v. Sofield*, No. 5:16-cv-00084-RLV-DSC, slip copy, 2017 WL 2569740, at *4-*5 (W.D.N.C. Jun. 13, 2017) (dismissing unjust enrichment claim pursuant to Fed. R. Civ. P. 12(b)(6) where claim barred by express contract).

**B.    Exculpatory agreements are enforceable**

"Virginia courts regularly enforce exculpatory agreements," *Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d 555, 558 (E.D. Va. 2007), such as the ones at issue here. "Exculpatory clauses are typically evaluated through a three-part test. '[A] defendant seeking to avoid liability under an exculpatory agreement must show (1) that the agreement does not contravene public policy, (2) that it could be readily understood by a reasonable person in the plaintiff's position, and (3) that it clearly and unequivocally releases the defendant from precisely the type of liability alleged by the plaintiff.'" *Kocinec*, 489 F. Supp. 2d at 559. The burden to challenge an exculpatory clause "lies on the party attempting to prove that a contract term is invalid, and not

on the party asserting that a contract term is valid." *Regency Photo & Video, Inc. v. Am. Online, Inc.*, 214 F. Supp. 2d 568, 573 (E.D. Va. 2002).

### C.      The Fuel Oil Contracts prohibit the claims Gunvor seeks to assert here

Here, the exculpatory provision in each of the Fuel Oil Contracts prohibits Gunvor from bringing claims for unjust enrichment and negligence misrepresentation: each party "acknowledges *that it will only be entitled to remedies in respect of breach* of the express terms of the contract" and, further, "*will not be liable in tort*." Kayablian Decl., Ex. 3, § 16 (emphasis added). In its Complaint Gunvor openly acknowledges the existence of the Fuel Oil Contracts— "In sum, Gunvor agreed to enter into a series of one-off contracts…."[5]—but provides no basis not to enforce the exculpatory provisions of the Fuel Oil Contracts.[6]  Indeed, as with the arbitration clause, it was Gunvor who drafted the exculpatory clauses and included them in the contracts. *See* Kayablian Decl., ¶ 19.

All of the factors point to enforcing the exculpatory clause to which Gunvor agreed. There is no credible public policy reason here. Defendants are not among the class of parties generally prohibited from limiting tort liability, such as public utilities or by employees imposing them as a condition of employment. *Kocinec*, 489 F. Supp. 2d at 560. Gunvor can reasonably be expected to have readily understood the clause's import. Gunvor, a global commodities trader that drafted the Fuel Oil Contracts—including the exculpatory clause—cannot pretend to be an unsophisticated party or to have been in an unfair bargaining position. *Id.* at 559-60. Likewise, Gunvor cannot credibly maintain that it did not understand the exculpatory clause that Gunvor itself drafted; the exculpatory clause "clearly and unequivocally" releases Defendants from all non-breach of contract claims. *See id.*

---

[5] Compl. ¶ 7.
[6] Gunvor's failed fraudulent inducement claim is discussed below.

Moreover, although Gunvor entered into the Fuel Oil Contracts with Nemsss Petroleum and not the Defendants, the agreement Gunvor made nonetheless binds it. Employees and officers of Nemsss Protection can invoke these protections because the practical effect of doing otherwise and permitting Gunvor to name Defendants in lieu of Nemsss Petroleum would be to nullify their protections. *See Arnold v. Arnold Corp.-Printed Commc'ns for Business*, 920 F.2d 1269, 1281 (6th Cir. 1990); *Linhart v. Lawson*, 261 Va. 30, 34, 540 S.E.2d 875, 877 (2001) (unless expressly altered by act of the Virginia General Assembly, pursuant to the common law, "the liabilities of principals and agents are coterminous").

### D. The exculpatory and non-reliance clauses in the Fuel Oil Contracts preclude even the fraud and fraudulent inducement claims

Although a contractual disclaimer of reliance does not by itself necessarily bar a fraudulent claim, such a provision can tend to show that a plaintiff will be unable to establish reasonable reliance, which is a required element of the claim. *Jared & Donna Murayama 1997 Trust*, 2011 WL 7575011, at *5 n.2; *accord, e.g.,* CHITTY ON CONTRACTS, vol. 1, § 7-144 (32d ed.) (English law) ("A clause that acknowledges that a party has not relied on a non-contractual representation may prevent that party showing that he was induced to enter the contract by a representation, as it may arise as an estoppel…."). On a proper case, such as this, the unreasonableness of a plaintiff's reliance is such that dismissal at the pleadings stage is appropriate. *See Jared*, 2011 WL 7575011, at *6 (sustaining demurrer to fraudulent inducement claim).

Here, Gunvor went well out of its way in an effort to preclude either party from relying on any alleged extra-contractual statements. The Fuel Oil Contracts were ***drafted by Gunvor*** and their terms ***imposed by Gunvor***. This fact undercuts a key public policy for the general rule de-emphasizing non-reliance clauses in fraudulent inducement cases.

The *first sentence* of each of the Fuel Oil Contracts states that it "cancels and supersedes any broker correspondence in relation to" each Fuel Oil Contract.

Gunvor included in each of the Fuel Oil Contracts an Entire Agreement Clause that not once but *twice disclaims any pre-contract representations*. First, each states that "The Contract contains the entire agreement between the parties and supersedes all previous negotiations, representations, agreements or commitments with regard to its subject matter." Then, each Fuel Oil Contract amplifies this disclaimer, stating: "Each party acknowledges that in entering into this contract it has not relied on any representations, warranties, statements or undertakings except those which are expressly set out herein…." Kayablian Decl., Exs. 3-6, § 16.

To further clarify that it was seeking to narrow the field of liability, Gunvor then inserted in the Entire Agreement clause, exculpatory language that prohibits the parties from being "liable in tort… in respect of any representations, warranties, statements or undertakings which may have been made prior to the contract being entered into." *Id.*

Moreover, Gunvor is a particularly sophisticated party, familiar with business dealings in this industry. Even in its Complaint, Gunvor notes that Gunvor is a "global commodities trading house that… sources and physically trades crude oil and refined oil products from countries around the world," with a principal place of business on the Rue Du Rhône in Geneva. Compl. ¶¶ 1, 8. It had had no previous history with Nemsss Petroleum, but instead of requiring contractual representations and warranties, *Gunvor stridently disclaimed reliance* on them. And the sums alleged to be at stake here were not insignificant: Gunvor alleges it received

$100,817,100.09 worth of fuel oil while it alleges it was owed $124,582,520.55 worth of fuel oil.[7]

In short, Gunvor's attempt to disavow the contractual obligations that it imposed and to create tort claims based on alleged reliance on alleged pre-contract misrepresentations is unreasonable as a matter of law.

## IV.    Gunvor's Complaint also fails to adequately plead its counts

In addition to the legal infirmities and contractual prohibitions discussed above, the claims of Gunvor's Complaint suffer several other defects.

All of Gunvor's counts, of course, must meet at least the fundamental plausibility pleading standard. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of claims where the plaintiff fails to "state a claim upon which relief can be granted."  A motion under Rule 12(b)(6) tests the sufficiency of a complaint.  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Legal sufficiency of a complaint "is measured by whether it meets the standards for a pleading" as outlined in the Federal Rules of Civil Procedure.  *See id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  Facial plausibility occurs where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Facts that are "merely consistent with liability do not establish a

---

[7] Above and beyond the exculpatory clauses discussed above, Gunvor's Fuel Oil Contracts also expressly excepted the parties from liability for any "damages or otherwise for any failure or delay in performance of any obligation hereunder other than any obligation to make payment, where such failure or delay is caused by… restrictions imposed by any government authority or person purporting to act therefore…." Kayablian Decl., Ex. 3, § 13. Given that Gunvor has affirmatively pleaded that the delays experienced in lifting the oil were the result of the actions of the Iraqi government, Compl. ¶¶ 82-84, 109, Gunvor's alleged resulting delay damages are also barred by the Fuel Oil Contracts it drafted.

plausible claim to relief." *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citation omitted). The Court is "not bound to accept as true legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*; *see also Nathan*, 707 F.3d at 455 ("We will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (citation omitted)).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted).

### A.  Gunvor cannot assert a claim for conversion because the Fuel Oil Contracts exist

Gunvor's Count III for conversion is precluded by the economic loss doctrine. Virginia law also recognizes the economic loss doctrine. *Levinson v. Massachusetts Mut. Life Ins. Co*, No. 4:06 CV 086, 2006 WL 3337419, at *13 (E.D. Va. Nov. 9, 2006) (citing *Gerald M. Moore & Son, Inc. v. Drewry*, 251 Va. 277, 279, 467 S.E.2d 811, 813 (1996). The doctrine "stands for the proposition that if a plaintiff's injury is only to property that is the subject of a contract, any loss in value is a matter of 'disappointed economic expectation,' for which relief lies exclusively in contract, not tort.'" *Id.*; *see also Factory Mutual Ins. Co. v. DLR Contracting, Inc.*, No 3:04-CV-834, 2005 WL 2704502, at *6 (E.D. Va. Oct. 20, 2005).

Here, Gunvor has recited that all of the payments were made pursuant to a "series of one-off contracts" with Nemsss Petroleum. Compl. ¶ 7. And, though Gunvor has gone out of its way

to avoid pleading breach of contract, the Complaint nonetheless is transparent in evincing, at base, the "disappointed economic expectation" unrecoverable in tort. E.g., *id.* ¶ 58 ("The total volume that was eventually loaded on board the MT CAPE TALLINN was… half the amount Gunvor had expected…."), ¶ 68 ("The delay in loading the BALTIC GALAXY was resulting in significant financial damage to Gunvor. Lawrence was aware that the BALTIC GALAXY was partially loaded and could not depart until fully loaded."). As a result, Gunvor's conversion claim is barred by the economic loss doctrine, and Count III should be dismissed.

**B.   Gunvor cannot assert a claim for unjust enrichment because the Fuel Oil Contracts exist**

Gunvor also cannot assert a claim for unjust enrichment (Count IV) because the Fuel Oil Contracts exist. Unjust enrichment is a "plaintiff's remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, but ***where the facts fail to establish that the parties established any form of agreement***." *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990) (emphasis added). Here, Gunvor and Nemsss Petroleum entered into each of the four Fuel Oil Contracts, agreements which governed this transaction. As a result, Gunvor is barred from reverting to quasi-contract claims by the fact of its actual contracts.

**C.   Gunvor cannot assert a claim for negligent misrepresentation, which does not exist under Virginia law and would be barred here by the economic loss rule**

Gunvor cannot assert a claim for negligent misrepresentation (Count V), which does not exist under Virginia law and would be nonetheless barred by the economic loss rule.

Virginia law does not recognize the tort of negligent misrepresentation. *See Lescs v. William R. Hughes, Inc.*, 168 F.3d 482 (Table), 1999 WL 12913, at *10 (4th Cir. Jan. 14, 1999) ("[T]he federal courts of this Circuit repeatedly have determined that Virginia does not recognize a general cause of action for negligent misrepresentation." (citations omitted)); *Longwood*

*Elastomers, Inc. v. Aeroquip Corp.*, 165 F.3d 18 (Table), 1998 WL 756902, at *3 (4th Cir. 1998) (discussing that Virginia courts have "refused to adopt the tort of negligent misrepresentation"); *Design & Production, Inc. v. Am. Exhibitions, Inc.*, 820 F. Supp. 2d 727, 742 (E.D. Va. 2011) ("Virginia does not recognize a claim for negligent misrepresentation."); *Bentley v. Legent Corp.*, 849 F. Supp. 429, 434 (E.D. Va. 1994) ("Virginia does not recognize any tort of negligent misrepresentation.").

Moreover, even if Virginia law recognized the tort of negligent misrepresentation, Gunvor's claim would still be barred because "Virginia law is clear that, absent privity of contract, the economic loss rule prevents a plaintiff from maintaining a negligence action against an individual to recover purely economic losses." *Crawford v. Deutsche Bank AG*, 244 F. Supp. 2d 615, 616 (E.D. Va. 2003); *accord Blake Constr. Co. v. Alley*, 353 S.E.2d 724, 727 (Va. 1987). This is because "tort law is designed to protect the safety of persons and property, while contract law seeks to protect bargained-for expectations." *Crawford*, 244 F. Supp. 2d at 617.

**D.    Gunvor's claim for civil conspiracy fails because Gunvor's attempt to convert a breach of contract action into a tort action fails**

Gunvor's Count VI (civil conspiracy) fails. Under Virginia law, the elements of civil conspiracy are "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing Glass v. Glass, 321 S.E. 2d 69 (Va. 1984)). A claim of civil conspiracy, however, further requires proof that the underlying tort was committed. *Id.* Therefore, if "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Id.* (citation and internal quotation marks omitted).

As discussed above, each of Guvnor's independent claims fails. As such, the Complaint is left without the predicate independent tort to support the civil conspiracy allegations, which then also fail.

    **E.**    **Gunvor fails to plausibly plead alter ego liability against Amira Group Company, LLC—largely because Gunvor has failed to plead against Amira Group Company, LLC**

Gunvor's Count VII (alter ego) also fails because Gunvor has failed to adequately plead an independent tort and because the Complaint fails to plead sufficient well-pleaded alter ego allegations. "In Virginia, the standards for veil piercing are very stringent, and piercing is an extraordinary measure that is permitted only in the most egregious circumstances." *Informatics Applications Grp. v. Shkolnikov*, 836 F. Supp. 2d 400, 426 (E.D. Va. 2011) (citation omitted). This stringency is required because alter ego liability attacks the fundamental concept of a corporation or other limited liability vehicle:

> It is well established under Virginia law that the "fundamental concept of a corporation is that it is a separate entity created under the law to enable a group of persons to limit their liability in a joint venture to the extent of their contributions to the capital stock. The property of the corporation is a basis for credit extended to it and those dealing with it are limited in their recovery to the property owned and possessed by the corporation."

*In re James River Coal Co.*, 360 B.R. 139, 173 (Bankr. E.D. Va. 2007) (quoting *Beale v. Kappa Alpha Order*, 192 Va. 382, 398, 64 S.E.2d 789, 798 (1951)). Thus, a "refusal to recognize the ordinary immunity of stockholders is not only overturning a basic provision of statutory or common law, but is ***also contrary to a vital economic policy underlying the whole corporate concept***." *Id.* (emphasis added).

Courts can pierce the corporate veil "only upon a showing that (1) the corporation was the alter ego, alias, stooge, or dummy of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Informatics*, 836 F. Supp. 2d at

427 (citations and internal quotation marks omitted).  "Under Virginia law, a court may pierce

the corporate veil to find that an individual is the alter ego of a corporation where it finds (i) a

unity of interest and ownership between [the individual and the corporation], and (ii) that [the

individual] used the corporation to evade a personal obligation, to perpetuate fraud or a crime, to

commit an injustice, or to gain an unfair advantage.'" *Income Tax School, Inc. v. Lopez,* No.

3:12-cv-334, 2012 WL 3249547, at *10 (E.D. Va. Aug. 7, 2012) (quoting *Newport News*

*Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011)).

In the Fourth Circuit, courts use several factors to determine whether one entity is the

alter ego of another.  Those factors include "'gross undercapitalization, insolvency, siphoning of

funds, failure to observe corporate formalities or maintain proper corporate records, non-

functioning of officers, control by a dominant stockholder, and injustice or fundamental

unfairness.'" *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014) (quoting *Vitol, S.A.*

*v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013)).  The party seeking to pierce the

veil to impose alter ego liability bears the burden of proof.  *Id.*

Alter ego claims, however, are not independent causes of action.  *VA C 12266 Jefferson,*

*LLC v. Mattress Warehouse, Inc.*, No. 4:14cv34, 2014 WL 5311453, at *4 (E.D. Va. Oct. 16,

2014) (citing *Shearson Lehman Hutton, Inc. v. Venners*, 165 F.3d 912 (4th Cir. 1998)).  "Rather,

alter ego is a method of imposing liability on an underlying cause of action."  *Id.* (citation and

internal quotation marks omitted).  Therefore, if there is no underlying claim on which to rest the

alter ego claim, the alter ego claim must be dismissed. *Id.*

First, as noted above, Gunvor's other claims fail, and because alter ego liability requires

an independent predicate tort, Gunvor's claim for alter ego liability likewise fails.

27

Second, Gunvor has failed to plead sufficient allegations of fact as to Defendant Amira Group Company, LLC to justify the "extraordinary measure" of alter ego liability. Much of Gunvor's pleading, in fact, is directed towards Nemsss Petroleum (with whom Gunvor has a binding agreement to arbitrate) or other non-parties.

The only allegations in the Complaint as to Defendant Amira Group Company, LLC are that it has a registered agent in Virginia and used Lawrence Kayablian's home address as a business address, Compl. ¶¶ 11, 143; that, on information and belief, Lawrence and Arman Kayablian own it, "directly or indirectly" and are the director or officers of it and other companies, *id.* ¶¶ 20, 133, 134; that an employee of an investment bank identified himself as an agent for Amira and used an "@amiraindustries.ch" email address, *id.* ¶¶ 16, 24, 140; that, on information and belief, Amira Management BV is a subsidiary of Defendant Amira Group Company, LLC, *id.* ¶ 43; and that someone **may** have told Gunvor that Defendant Amira Group Company, LLC could supply fuel oil, *id.* ¶ 107 ("and/or")). The remaining allegations are boilerplate, conclusory allegations devoid of any factual allegation,  *id.* ¶¶ 133, 137-139, 144, or make allegations about other entities, *id.* ¶¶ 135-36, 142.  *See Taizhou Zhongneng Import & Export Co. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) ("plainly legal conclusions[] with no specific factual allegations" insufficient to withstand a motion to dismiss).

Nowhere does Gunvor allege that Defendant Amira Group Company, LLC was used to perpetuate a fraud against it. Nowhere does Gunvor allege that Defendant Amira Group Company, LLC is insolvent or was grossly undercapitalized. Nowhere does Gunvor allege that Defendant Amira Group Company, LLC siphoned funds. Nowhere does Gunvor allege that Defendant Amira Group Company, LLC failed to observe any corporate formality or maintain corporate records. Nowhere does Gunvor allege that Defendant Amira Group Company, LLC's

officers failed to function. Gunvor conclusorily alleges complete domination by Lawrence and Arman Kayablian, but Gunvor fails to plead any factual allegation to support that conclusion. Gunvor fails to plead any injustice or fundamental unfairness that would result from respecting the separate corporate form of Defendant Amira Group Company, LLC.

At most, the Complaint may plead allegations suggesting that Lawrence and Arman Kayablian exercise some degree of control over Defendant Amira Group Company, LLC, but the Complaint contains no factual allegations to demonstrate that they completely dominate it. And, significantly, even "proof that some person 'may dominate or control' the corporation, or 'may treat it as a mere department, instrumentality, agency, etc.' *is not enough* to pierce the veil." *Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (emphasis added). Gunvor would still need to plead what fraud or other injustice was wrought through the use of Defendant Amira Group Company, LLC's corporate form, which Gunvor has not done.

## CONCLUSION

Gunvor's Complaint is a transparent attempt to plead around its Fuel Oil Contracts with Nemsss Petroleum, while nonetheless seeking to vitiate them. Those contracts include exculpatory provisions and an agreement to arbitrate that Gunvor itself inserted into the Fuel Oil Contracts. Gunvor is attempting to dupe the Court into converting a contract dispute between sophisticated business entities into an attack on the officers of one of those contracting parties. Because the Complaint fails to join an indispensable party, because these claims are subject to a mandatory arbitration clause, because Gunvor's contracts prohibits the remedy it seeks, and the Complaint otherwise fails to state claims upon which relief can be granted, the Court should dismiss the Complaint in its entirety.

Dated: September 14, 2018                    Respectfully submitted,

                                             By: */s/ John W. Lomas, Jr.*

                                             John W. Lomas, Jr. (VSB No. 73148)
                                             William T. O'Brien (*pro hac vice*)
                                             Daniel Morris (*pro hac vice*)
                                             DENTONS US LLP
                                             1900 K Street N.W.
                                             Washington, D.C. 20006
                                             Tel. (202) 408-6387
                                             Fax: (202) 496-7756
                                             Email: john.lomas@dentons.com
                                                     william.obrien@dentons.com
                                                     daniel.morris@dentons.com

                                             *Counsel for Defendants Arman Kayablian,*
                                             *Lawrence Kayablian, and Amira Group Company,*
                                             *LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following counsel of record for Plaintiff Gunvor SA:

                 Kierstan Lee Carlson, Esq.
                 Blank Rome LLP
                 1825 Eye Street NW
                 Washington, DC 20006
                 carlson@blankrome.com


                                    */s/ John W. Lomas, Jr.*
                                    John W. Lomas, Jr.
                                    Virginia Bar Number: 73148
                                    *Counsel for Defendants Arman Kayablian*
                                    *Lawrence Kayablian and Amira Group*
                                    *Company, LLC*
                                    DENTONS US LLP
                                    1900 K Street, N.W.
                                    Washington, DC 20006
                                    Telephone No.: (202) 496-7183
                                    Fax No.: (202) 496-7756
                                    john.lomas@dentons.com