**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **GUNVOR SA,** | |
| **Plaintiff,** | **Civil Action No: 1:18-cv-00934-LMB-MSN** |
| **v.** | |
| **ARMAN KAYABLIAN, LAWRENCE KAYABLIAN, and AMIRA GROUP COMPANY, LLC,** | |
| **Defendants.** | |

<u>**GUNVOR SA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**</u>

Blank Rome LLP
1825 Eye Street NW
Washington, DC 20006
(202) 420-2200
Kierstan L. Carlson
William R. Bennett, III
Lauren B. Wilgus

*Attorneys for Plaintiff Gunvor SA*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

I.    THE JOINT VENTURE BETWEEN GUNVOR AND DEFENDANTS. ..............2

II.    DEFENDANTS FRAUDULENTLY INDUCED GUNVOR TO ENTER THE JOINT VENTURE. ..............................................................................3

III.    DEFENDANTS MISUSED FUNDS THAT GUNVOR INVESTED FOR THE BENEFIT OF THE JOINT VENTURE. ........................................4

IV.    GUNVOR'S DISCOVERY OF THE FRAUD AND DEFENDANTS' EVASIVE CONDUCT IN RESPONSE TO GUNVOR'S ATTEMPTS TO INVESTIGATE. ..............................................................................5

ARGUMENT ................................................................................................................................6

I.    THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE NEMSSS IS NEITHER A NECESSARY NOR AN INDISPENSABLE PARTY TO THIS LAWSUIT. .........................................................................6

A.    Defendants Have Failed to Demonstrate that Nemsss Is a Necessary Party Under Rule 19(a)......................................................6

1.    Nemsss Is Not a Necessary Party Under Rule 19(a)(1)(A) Because Complete Relief Can Be Afforded to Gunvor in its Absence.............................................................................7

2.    Nemsss Is Not a Necessary Party Under Rule 19(a)(1)(B) Because it Has Not Claimed and Does Not Have an Interest Relating to the Subject of this Action. ...........................8

a.    None of Nemsss's Interests Would Be Impaired Under Fed. R. Civ. P. 19(a)(1)(B)(i) in its Absence...........8

b.    There Is No Risk of Inconsistent Obligations Under Fed. R. Civ. P. 19(a)(1)(B)(ii)..............................10

B.    Even if Nemsss Were a Necessary Party, Defendants Have Failed to Demonstrate that it Is an Indispensable Party........................................10

II.    THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE PARTIES NEVER AGREED TO ARBITRATE. ..................................................13

A.    Standard of Review...................................................................................13

B.    There Is No Express Agreement to Arbitrate Gunvor's Tort Claims Against Defendants. ...................................................................................14

C.    Gunvor Alleges Defendants Fraudulently Induced Gunvor to Enter into the Joint Venture, Not the Fuel Oil Contracts. ...................................15

D.   Defendants Cannot Avail Themselves of the Arbitration Clause in the Fuel Oil Contracts. ..............................................................16

III.   THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE FUEL OIL CONTRACTS DO NOT BAR GUNVOR'S CLAIMS. ....................18

A.   The Exculpatory Clause in the Fuel Oil Contracts Does Not Preclude Gunvor's Claims. ......................................................................18

B.   The Non-Reliance Clause in the Fuel Oil Contracts Does Not Preclude Gunvor's Fraud or Fraudulent Inducement Claims. ...................20

IV.   THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE COUNTS III-VII OF THE VERIFIED COMPLAINT STATE PLAUSIBLE CLAIMS FOR RELIEF. .............................................................23

A.   Standard of Review......................................................................................23

B.   Count III States a Plausible Claim for Conversion....................................24

C.   Count IV States a Plausible Claim for Unjust Enrichment........................25

D.   Count V States a Plausible Claim for Constructive Fraud and Gunvor Requests that the Court Treat it as such Instead of as a Claim for Negligent Misrepresentation. .....................................................26

E.   Count VI States a Plausible Claim for Civil Conspiracy............................27

F.   Count VII Establishes that the Defendants are Alter Egos of One Another and, therefore, that Counts I-VI State Plausible Claims Against Amira. ..............................................................................................27

CONCLUSION...................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.G. Dillard, Inc. v. Stonehaus Constr., LLC,*
   No. 151182, 2016 WL 3213630 (Va. June 2, 2016)................................................28

*Abi-Najm v. Concord Condo., LLC,*
   699 S.E.2d 483 (Va. 2010)......................................................................................26

*Adkins v. Labor Ready, Inc.,*
   303 F.3d 496 (4th Cir. 2002) .............................................................................13, 15

*Aggarao v. MOL Ship Mgmt. Co., Ltd.,*
   675 F.3d 355 (4th Cir. 2012) ............................................................................16, 17

*All Bus. Sols., Inc. v. NationsLine, Inc.,*
   629 F. Supp. 2d 553 (W.D. Va. 2009) ....................................................................20

*Am. Gen. Life & Accident Ins. Co. v. Wood,*
   429 F.3d 83 (4th Cir. 2005) .......................................................................................6

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,*
   96 F.3d 88 (4th Cir. 1996) .......................................................................................14

*Arnold v. Arnold Corp.,*
   920 F.2d 1269 (6th Cir. 1990) .................................................................................19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................23

*Bank of Montreal v. Signet Bank,*
   193 F.3d 818 (4th Cir. 1999) ...................................................................................21

*Barnhardt v. Scottsdale Ins. Co.,*
   No. 1:13-cv-637, 2014 U.S. Dist. LEXIS 2296 (M.D.N.C. Jan. 9, 2014) ................7

*Brown v. Transurban USA, Inc.,*
   144 F. Supp. 3d 809, 844 (E.D. Va. 2015) .............................................................25

*Butts v. Weltman, Weinberg & Reis Co., LPA,*
   No. 1:13-cv-1026, 2013 WL 6039040 (E.D. Va. Nov. 14, 2013) ...........................25

*Cline-Thomas v. Keels,*
   No. 2:13-cv-204, 2013 WL 12145815 (E.D. Va. Sept. 23, 2013) ...........................23

iv

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*,
    102 F.3d 677 (2d Cir. 1996)...................................................................7, 8

*Design & Prod., Inc. v. Am. Exhibitions, Inc.*,
    820 F. Supp. 2d 727 (E.D. Va. 2011) .................................................26

*Discover Bank v. Vaden*,
    489 F.3d 594 (4th Cir. 2007) ..............................................................15

*Drake v. Livesay*,
    341 S.E.2d 186 (1986) .........................................................................17

*Durham v. Nat'l Pool Equip. Co.*,
    138 S.E.2d 55 (1964) ...........................................................................14

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
    688 F. Supp. 2d 443 (E.D. Va. 2009) .................................................27

*Erichsen v. RBC Capital Mkts., LLC*,
    883 F. Supp. 2d 562 (E.D.N.C. 2012)..................................................13

*Evaluation Research Corp. v. Alequin*,
    439 S.E.2d 387 (1994) .........................................................................26

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)..............................................................................14

*Flame S.A. v. Indus. Carriers, Inc.*,
    39 F. Supp. 3d 769 (E.D. Va. 2014) ..............................................27, 28

*Fleming v. Bank of Va.*,
    343 S.E.2d 341 (1986) .........................................................................17

*George Robberecht Seafood, Inc. v. Maitland Bros. Co.*
    255 S.E. 2d 682 (Va. 1979)..................................................................21

*Hawkins v. Fishbeck*,
    301 F. Supp. 3d 650, 656 (W.D. Va. 2017) ........................................15

*Hewlette v. Hovis*,
    318 F. Supp. 2d 332 (E.D. Va. 2004) .................................................24

*Hightower v. GMRI, Inc.*,
    272 F.3d 239 (4th Cir. 2001) ..............................................................14

*Hill v. Alstom Power, Inc.*,
    No. 3:13-cv-00496, 2013 WL 6408416 (E.D. Va. Dec. 6, 2013)...........14

v

*Hitachi Credit Am. Corp. v. Signet Bank*,
    166 F.3d 614 (4th Cir. 1999) ...................................................................19, 21, 22

*JTH Tax, Inc. v. Whitaker*,
    No. 2:07-cv-170, 2007 WL 2821830 (E.D. Va. Sept. 27, 2007) ...........................27

*Klein v. Verizon Commc'ns, Inc.*,
    No. 1:12-cv-00757, 2017 WL 5071306 (E.D. Va. Aug. 9, 2017) .........................14

*Kocinec v. Pub. Storage, Inc.*,
    489 F. Supp. 2d 555 (E.D. Va. 2007) ...................................................................20

*Legum Furniture Corp. v. Levine*,
    232 S.E.2d 782 (1977) .............................................................................................3

*Levinson v. Mass. Mut. Life Ins. Co.*
    No. 4:06-cv-086, 2006 WL 3337419 (E.D. Va. Nov. 9, 2006) ...........................24

*Loney v. State Collection Serv.*,
    No. 7:13-cv-247, 2014 U.S. Dist. LEXIS 13821 (E.D.N.C. Jan. 31, 2014) .....................13, 14

*Long v. Silver*,
    248 F.3d 309 (4th Cir. 2001) ..........................................................................15, 17

*Marina One, Inc. v. Jones*,
    29 F. Supp. 3d 669 (E.D. Va. 2014) .......................................................................8

*Nat'l Motels, Inc. v. Howard Johnson, Inc.*,
    373 F.2d 375 (4th Cir. 1967) ................................................................................20

*NorthStar Aviation, LLC v. Alberto*,
    No. 1:18-cv-191, 2018 WL 3647119 (E.D. Va. July 31, 2018)............................25

*Oliver v. Omega Protein Inc.*,
    No. 3:10-cv-47, 2011 WL 1044403 (E.D. Va. Jan. 31, 2011)...............................28

*Parks, Millican & Mann, LLC v. Figures Toy Co.*,
    No. 2:16-cv-522, 2017 WL 5897901 (E.D. Va. Nov. 29, 2017) ...........................24

*Peregrine Myanmar Ltd. v. Segal*,
    89 F.3d 41 (2d Cir. 1996) .......................................................................................7

*PGI, Inc. v. Rathe Prods., Inc.*,
    265 Va. 334 (2003) ...............................................................................................24

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*,
    7 F.3d 1110 (3d Cir. 1993)....................................................................................17

*Richmond v. Madison Mgmt. Grp., Inc.*,
918 F.2d 438 (4th Cir. 1990) ...........................................................................26

*S. Co. Energy Mktg., L.P. v. Va. Elec. and Power Co.*,
No. 99-cv-1221, 190 F.R.D. 182 (E.D. Va. 1999)...................................6, 10, 11, 12

*Schlumberger Indus., Inc. v. Nat'l Surety Corp.*,
36 F.3d 1274 (4th Cir. 1994) ...........................................................................10

*Schwabedissen Maschinent Anolgen GMBH v. Int'l Paper*,
206 F.3d 411 (4th Cir. 2000) ...........................................................................16

*Shintom Am., Inc. v. Cellular Info. Network, Inc.*,
825 F. Supp. 108 (E.D. Va. 1993), *aff'd sub nom. Shintom Am., Inc. v. Farm
Fresh, Inc.*, 27 F.3d 564 (4th Cir. 1994)..............................................................3

*Thomson-CSF, S.A. v. Am. Arb. Assoc.*,
64 F.3d 773 (2d Cir. 1995)..........................................................................16,17

*Trust, Inc. v. First Flight Ltd. P'ship*,
580 S.E.2d 806 (Va. 2003)...............................................................................28

*United States v. Bowen*,
172 F.3d 682 (9th Cir. 1999) .............................................................................8

*United States v. Cty. of Arlington*,
669 F.2d 925 (4th Cir. 1982) .............................................................................7

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)........................................................................................14

*Va. Int'l Terminals, LLC v. Keystone Transp. Sols.*,
LLC, No. 2:17-cv-537, 2018 U.S. Dist. LEXIS 74555 (E.D. Va. Apr. 5, 2018).................6, 8

*Vitol, S.A. v. Primerose Shipping Co.*,
708 F.3d 527 (4th Cir. 2013) ...........................................................................28

*Weckesser v. Knight Enters. S.E., LLC*,
No. 17-1247, 2018 U.S. App. LEXIS 15751 (4th Cir. June 12, 2018)...................................14

*Whitt Sturtevant, LLP v. NC Plaza LLC*,
43 N.E.3d 19 (Ohio Ct. App. 2015)....................................................................19

*XL Specialty Ins. Co. v. Truland*,
No. 1:14-cv-1058, 2015 WL 925582 (E.D. Va. Mar. 3, 2015)..............................................21

vii

**Statutes**

9 U.S.C. § 1 *et seq*......................................................................................................13

9 U.S.C. § 4.................................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 23

Fed. R. Civ. P. 19.....................................................................................................6, 8

Fed. R. Civ. P. 19(a)............................................................................................6, 7, 10

Fed. R. Civ. P. 19(a)(1)...............................................................................................8

Fed. R. Civ. P. 19(a)(1)(A)..........................................................................................7

Fed. R. Civ. P. 19(a)(1)(A)-(B).....................................................................................7

Fed. R. Civ. P. 19(a)(1)(B)...........................................................................................8

Fed. R. Civ. P. 19(a)(1)(B)(i)....................................................................................8, 9

Fed. R. Civ. P. 19(a)(1)(B)(ii).....................................................................................10

Fed. R. Civ. P. 19(b)...............................................................................................6, 11

Fed. R. Civ. P. 19(b)(1)..............................................................................................11

Fed. R. Civ. P. 19(b)(2)..............................................................................................12

Fed. R. Civ. P. 19(b)(3)..............................................................................................12

Fed. R. Civ. P. 19(b)(4)..............................................................................................12

Restatement (Second) of Contracts § 195 (1981).......................................................20

Restatement (Third) of Agency § 7.01 .......................................................................19

Plaintiff, Gunvor SA ("Gunvor"), by its attorneys Blank Rome LLP, respectfully submits this Opposition to the Motion to Dismiss, or in the Alternative, to Compel Arbitration ("Motion") and the supporting Memorandum submitted therewith ("Mem."), ECF Nos. 20-22, filed by Defendants Arman Kayablian, ("Arman"), Lawrence Kayablian ("Lawrence"), and Amira Group Company, LLC ("Amira") (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants' Motion is a deliberate attempt to avoid the consequences of their wrongful conduct and outright fraud in connection with a joint venture arrangement between the parties (the "JV").  Defendants predicate their Motion on the incorrect assertion that the terms of one-off, limited purpose fuel oil contracts that Gunvor executed with Defendants' non-party affiliate Nemsss Petroleum Limited of BVI ("Nemsss") *in furtherance of the JV* (the "Fuel Oil Contracts") require the Court to *either* dismiss the *intentional torts* alleged in the Verified Complaint *or* compel Gunvor to arbitrate the dispute *despite the absence of any written arbitration agreement* between the parties. Defendants' arguments defy all logic and are wrong on both the law and the facts.

Defendants mistakenly contend that the Complaint must be dismissed because Nemsss is indispensable and joinder would destroy the Court's diversity jurisdiction.  But, Nemsss is neither necessary, nor indispensable.  And Defendants cannot ignore that this case arises out of the JV, the existing parties are the parties to the JV, and the Court can accord complete relief without issue.

Defendants' effort to compel arbitration also fails because it relies upon an arbitration provision in the Fuel Oil Contracts (to which they were not parties), rather than upon any written agreement between Gunvor and Defendants.  Because there is no such agreement, there is no basis on which to compel arbitration of Gunvor's tort claims against the Defendants.

Defendants' Rule 12(b)(6) Motion suffers from the same defects, as it mistakenly contends that exculpatory and non-reliance clauses in the Fuel Oil Contracts bar Gunvor's claims. Not only are these clauses inapplicable because Gunvor's claims relate to tortious conduct within the context of the JV, but they also are unenforceable because they contravene public policy. Moreover, Defendants do not attack the sufficiency of Gunvor's pleading with respect to any of the Counts except Count VII for Alter Ego. And, even that argument fails because the Complaint sufficiently alleges that Arman and Lawrence controlled and manipulated the corporate form of Amira and other affiliates in order to perpetrate a fraud against Gunvor.

For all of these reasons, the Court should summarily deny Defendants' Motion.

## STATEMENT OF FACTS[1]

### I.  THE JOINT VENTURE BETWEEN GUNVOR AND DEFENDANTS.

Gunvor's action relates entirely to the JV, which never was memorialized in writing. Under the JV, (1) Gunvor agreed to finance several million dollars in prepayments to the Iraqi Oil Tankers Corporation ("IOTC"), a state-owned Iraqi company specializing in the transport of petroleum products; and Defendants agreed to use their affiliated businesses in Iraq to lift the fuel oil from a refinery pursuant to a tender contract with IOTC and transport it by truck to a port where it would be loaded onto vessels chartered by Gunvor. *See* Compl. ¶¶ 13, 27-30, 36-37. The entities Defendants agreed to use to facilitate the JV were non-parties Nemsss and Gulf Energy for Petroleum Service ("GEPS"). *Id.* ¶¶ 12, 14, 27-30, 36-37.

The terms of the JV were: Gunvor would remit prepayment funds to Nemsss; Nemsss would remit those funds to GEPS; GEPS would deposit the funds into IOTC's bank account; and

---

[1] The facts set forth in Gunvor's Verified Complaint, ECF No. 1, are incorporated herein by reference. Terms not defined in this brief have the meaning attributed to them in the Complaint.

IOTC would authorize GEPS to lift fuel from the refinery.  *Id.* ¶ 37.  Gunvor's prepayments were made pursuant to the Fuel Oil Contracts, one-off contracts with Nemsss that were executed simply to facilitate the JV.  *Id.* ¶ 7.  The parties further agreed that Nemsss would make all arrangements and incur all shore-side expenses, while Gunvor would make all shipping arrangements and incur shipping-related costs.  *Id.* ¶ 38.  Expenses and income from sales of the fuel oil were then to be split on a 50/50 basis.  *Id.*[2]

## II.   DEFENDANTS FRAUDULENTLY INDUCED GUNVOR TO ENTER THE JOINT VENTURE.

Defendants proposed the JV in or around March 2016, approaching Gunvor through their Swiss attorney and Ian Thompson ("Thompson") of Hannam & Partners ("H&P"), an investment bank that provided financial and brokerage services to Defendants and other entities within the "Amira Group" (all of which are controlled by Defendants), including Amira and Nemsss.  *Id.* ¶¶ 6, 9, 15, 23-24.  Over the course of several meetings, Defendants, individually and through Thompson, described the JV and provided Gunvor with an "investor teaser" and an Amalgamated Presentation, which explained the process through which Nemsss and GEPS would obtain fuel oil and the volume of oil available through IOTC.  *See id.* ¶¶ 26-42, Ex. C-D. Defendants also provided, through Thompson and a Vice President of Amira Management BV,

---

[2] "The elements of a joint venture in Virginia are an agreement, express or implied to 1) jointly share in the profits and losses of an undertaking in which the parties have a community of interest in the object and purpose, and 2) have joint and mutual control and management by each party over the other in respects thereto."  *Shintom Am., Inc. v. Cellular Info. Network, Inc.*, 825 F. Supp. 108, 111 (E.D. Va. 1993), *aff'd sub nom. Shintom Am., Inc. v. Farm Fresh, Inc.*, 27 F.3d 564 (4th Cir. 1994); *see also Legum Furniture Corp. v. Levine*, 232 S.E.2d 782, 785–86 (1977) ("Joint adventures are not established by operation of law, but are created by contract, express or implied. Little formality is required. The conduct of the parties, as well as other facts and circumstances of a particular case, will often justify the inference that such a contract exists.").

what purported to be a copy of the relevant tender contract between IOTC and GEPS.  *Id.* ¶¶ 40, 43-46.  Finally, Defendants represented that the JV could not be formalized because there was an urgent need to lift the fuel oil and insufficient time to memorialize an agreement.  *Id*. ¶ 5.

Based on Defendants' representations and the materials provided, all of which had H&P's imprimatur, Gunvor agreed to enter the JV in or around April 2016, and began making prepayments pursuant to the Fuel Oil Contracts.  *See id.* ¶¶ 4, 6, 23-48, 107-111.  All told, Gunvor remitted a total of $28,000,000.  *Id.* ¶ 90.

Unbeknownst to Gunvor, however, Defendants' representations, the teaser, the Amalgamated Presentation, and the IOTC/GEPS contract either contained false and misleading information or were wholly fraudulent.  *See, e.g.*, *id.* ¶¶ 46, 71, 81-84, 87, 107-110, 129.  Indeed, Gunvor later learned that Defendants knew it was impossible to lift the amount of fuel proposed under the JV, yet proposed the arrangement anyway.  *Id.* ¶¶ 80-84, 103.

## III.    DEFENDANTS MISUSED FUNDS THAT GUNVOR INVESTED FOR THE BENEFIT OF THE JOINT VENTURE.

Over the course of the JV, from approximately April 2016 through June 2017, Defendants misused millions of dollars of Gunvor's invested funds.  Defendants' unauthorized transactions included: (1) wire transfers sent to entities *other than* IOTC, none of which were for the benefit of the JV; (2) diversions of prepayment funds for "'working capital,'" as well as "security costs, 'seed capital,' a performance bond, and landside costs" even though the funds should have been used exclusively to purchase fuel oil; and (3) additional expenditures of Gunvor's funds on a series of vaguely described expenses, including for travel, entertainment, "supervision," and miscellaneous fees, none of which were contemplated by the JV.  *See, e.g.*, *id.* ¶¶ 50, 64, 71-75, 85-87.  These unauthorized transactions, combined with Defendants' inability

to purchase and deliver the volume of fuel oil promised, caused Gunvor to suffer substantial damages of not less than $28,000,000.  *See, e.g.*, *id.* ¶¶ 48, 56, 60, 69, 79, 99-103, 114-115, 118-121, 124-127, 129.

## IV.    GUNVOR'S DISCOVERY OF THE FRAUD AND DEFENDANTS' EVASIVE CONDUCT IN RESPONSE TO GUNVOR'S ATTEMPTS TO INVESTIGATE.

At several points in time, Gunvor became suspicious about Defendants' use of its prepayment funds, particularly after Defendants repeatedly failed to deliver the promised volumes of fuel oil.  Gunvor made several inquiries concerning Defendants' compliance with the JV, often through Thompson, requesting explanations about the contents of the investor teaser and justifications for expenditures and wire transfers. *See generally id.* ¶¶ 50-66, 71-75, 80, 85-88, 100-102.  In response, Defendants either ignored Gunvor's requests or responded with misinformation.  *See id.*  Gunvor also undertook an informal audit in November 2016, during which GEPS employees tipped Gunvor off that the entire JV may have been a sham from the start.  *Id.* ¶¶ 81-84.  This prompted Gunvor to double-down on its efforts to learn where its money was going, and ultimately to push for a second audit in early 2017; however, Defendants subsequently cut-off communications with Gunvor, thus making it impossible for Gunvor to undertake a full investigation of the fraud.  *Id.* ¶ 89.  Consequently, because Defendants' misconduct occurred, in part, within this judicial district, *id.* ¶¶ 18-19, Gunvor now seeks redress in this Court for Defendants' substantial fraud in connection with the JV.

**ARGUMENT**

I.    **THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE NEMSSS IS NEITHER A NECESSARY NOR AN INDISPENSABLE PARTY TO THIS LAWSUIT.**

To prevail on their Motion, Defendants must establish that Nemsss is a necessary and indispensable party. Defendants incorrectly claim that Nemsss is an indispensable party because Gunvor's claims arise under the Fuel Oil Contracts. Mem. 8. To the contrary, Gunvor's claims hinge solely and directly on Defendants' fraudulent conduct in connection with the JV.  And, because all the parties to the JV already are parties to this lawsuit, the Court can accord complete relief without subjecting Defendants to inconsistent obligations.

There is a two-step inquiry to determine whether joinder of a party is required: (1) whether the party is "necessary;" and (2) whether the party is "indispensable."  *See* Fed. R. Civ. P. 19(a)-(b), respectively, *see also Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).  If the court determines that a party is necessary under Rule 19(a), but joinder is not feasible, the court must then determine whether the absent party is "indispensable" under Rule 19(b).  *See Va. Int'l Terminals, LLC v. Keystone Transp. Sols*., LLC, No. 2:17-cv-537, 2018 U.S. Dist. LEXIS 74555, at *21 (E.D. Va. Apr. 5, 2018) (citing *Wood*, 429 F.3d at 92). Defendants bear the burden of proving that a non-party must be joined.  *Id.* (citations omitted).

For the reasons set forth below, Defendants have failed to meet their burden and, therefore, the Motion to Dismiss for failure to join an indispensable party should be denied.

A.    **Defendants Have Failed to Demonstrate that Nemsss Is a Necessary Party Under Rule 19(a).**

A non-party "is not necessary simply because joinder would be convenient, or because two claims share common facts." *S. Co. Energy Mktg., L.P. v. Va. Elec. and Power Co., No. 99-*

cv-1221, 190 F.R.D. 182, 185 (E.D. Va. 1999). Rather, a non-party is only "necessary" within the meaning of Rule 19(a) if (1) the non-party's presence is needed to afford "complete relief" to the existing parties, or (2) the non-party "claims an interest in the subject of the action" and a failure to join that party would *either* (a) "impair or impede the [non-party's] ability to protect that interest" *or* (b) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* Fed. R. Civ. P. 19(a)(1)(A)-(B). If there is no claimed interest, the court need not ask whether a failure to join impairs or impedes a non-party's interest or if there is a risk of inconsistent obligations. *See Barnhardt v. Scottsdale Ins. Co.*, No. 1:13-cv-637, 2014 U.S. Dist. LEXIS 2296, at *9 (M.D.N.C. Jan. 9, 2014) (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) ("[Defendant's] attempt to assert on behalf of [the absent party] its supposed concern about the dilution of its interest . . . falls outside the language of the rule."); *see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) (citation omitted). As set forth below, Defendants cannot establish that Nemsss is a necessary party under Rule 19(a).

### 1.    Nemsss Is Not a Necessary Party Under Rule 19(a)(1)(A) Because Complete Relief Can Be Afforded to Gunvor in its Absence.

Under Rule 19(a)(1)(A), "[c]omplete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *United States v. Cty. of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982). Tellingly, Defendants do not – and cannot – argue that Nemsss must be joined in this lawsuit for the Court to be able to accord complete relief among the existing parties. Indeed, Defendants cannot do so because the damages and rights at issue relate exclusively to the parties' relationship, particularly to the misrepresentations made by Defendants to Gunvor in the context of the JV. Gunvor does not seek relief from non-

7

party Nemsss under the Fuel Oil Contracts.  Nor would Gunvor's claims against Defendants

affect any claims Gunvor may have against Nemsss.

> **2.      Nemsss Is Not a Necessary Party Under Rule 19(a)(1)(B) Because it Has Not Claimed and Does Not Have an Interest Relating to the Subject of this Action.**

A non-party must only be joined under Rule 19(a)(1)(B) if "*that person claims an interest

relating to the subject of the action.*" (emphasis added). *See also ConnTech*, 102 F.3d at 683.

There is little precedent about what it means to "claim" a relevant interest.  *See Va. Int'l*

*Terminals,* 2018 U.S. Dist. LEXIS 74555, at *21-22 (*citing Marina One, Inc. v. Jones*, 29 F.

Supp. 3d 669, 678 (E.D. Va. 2014).  But, "the precedent that exists interprets that requirement

narrowly, usually requiring some sort of affirmative indication by the absent party in the court

hearing the Rule 19 matter."  *Marina One,* 29 F. Supp. 3d at 678; *see also, e.g.*, *United States v.*

*Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (district court did not err in holding joinder

unnecessary because non-party was aware of action and did not claim an interest).  Moreover, a

party's "self-serving attempts to assert interests" on behalf of an absent party fall outside the

requirements of Rule 19(a)(1)(B) and do not support the mandatory joinder of said party.  *Id*.

Nemsss is not necessary under Rule 19(a)(1)(B) because it has not – and cannot – claim

any interest in this action.  Even if Nemsss had claimed an interest, Defendants' have not shown

that Gunvor's failure to join Nemsss impairs or impedes its interests or that there is a risk of

inconsistent obligations.

> **a.      *None of Nemsss's Interests Would Be Impaired Under Fed. R. Civ. P. 19(a)(1)(B)(i) in its Absence.***

Defendants' argument that Nemsss is necessary because Gunvor's action deprives

Nemsss of its contractual rights is flawed.  Mem. 8. They claim that, by suing Defendants,

"Gunvor denies Nemsss Petroleum its contractual dispute resolution and limitation of liability rights and denies it the opportunity to vindicate its reputation." Mem. 9. But, once again, *Gunvor has not brought suit for breach of contract*. And, even if it had, Gunvor's claim would be for breach of the JV. Thus, Nemsss's contractual rights are not impacted in any way by its absence from this suit.

Defendants also mischaracterize Gunvor's claims as seeking findings against Nemsss. For example, Defendants' statement that "Count II alleges that Gunvor was fraudulently induced to enter into the Fuel Oil Contracts with Nemsss Petroleum," Mem. 8, is false.[3] Indeed, Count II alleges that *Lawrence and Arman* fraudulently induced Gunvor to enter into the JV because they "knowingly made false statements to Gunvor regarding the volume of fuel available from IOTC to induce Gunvor to enter into a joint venture with them" and "Gunvor relied in fact on Defendants Lawrence and Arman's representations when it entered into the joint venture with them." Compl. ¶ 27. Comparably, Defendants cite paragraphs 7, 96, 102, 127, 131 of the Complaint to support their argument that "Gunvor's Complaint seeks findings that Nemsss Petroleum failed to properly perform the Fuel Oil Contracts, causing Gunvor to incur "delay costs," and further seeks to extract payments Gunvor made to Nemsss Petroleum pursuant to the Fuel Oil Contracts," Mem. 9; however, the allegations in those paragraphs support Gunvor's claims that Defendants committed fraud in connection with the JV.

While a non-party may be deemed "necessary" if its ability to protect its own interests may be impaired or impeded if it is not joined, *see* Fed. R. Civ. P. 19(a)(1)(B)(i), there is no such

---

[3] Gunvor makes no admissions or representations concerning any fraud in connection with the Fuel Oil Contracts, which it believes also were procured as a result of Defendants' misrepresentations. Rather, Gunvor's claims relate entirely to the parties' JV.

risk here.  In sum, Nemsss is not a necessary party because it has not asserted an interest in this litigation and Nemsss's claims, if any, would arise under a separate contract. Thus, Nemsss's ability to protect its own interests would not be impaired or impeded by allowing this action to proceed without it.

> **b.**   ***There Is No Risk of Inconsistent Obligations Under Fed. R. Civ. P. 19(a)(1)(B)(ii).***

Defendants do not – and cannot – make any arguments suggesting that Nemsss is "necessary" pursuant to Rule 19(a)(1)(B)(ii) because its absence might leave Defendants subject to "inconsistent obligations."  The term "'inconsistent obligations' does not mean 'any inconsistency;'" rather, "inconsistent obligations arise only when a party to the case risks facing conflicting judgments, so that compliance with one would conflict with the other." *See Southern Company*, 190 F.R.D. at 186.

Here, Defendants have not – and cannot – identify any inconsistent obligation that might result if Gunvor were to litigate an unfiled, speculative claim against Nemsss, separately from the claims asserted by Gunvor against Defendants in this case.  Nor will this action prejudice any claim Gunvor might have with respect to the Fuel Oil Contracts with Nemsss.  As in *Southern Company*, "this case involves different contracts between different parties, each giving rise to distinct causes of action, with different consequences and different measures of damages." 190 F.R.D. at 188.  For these reasons, Nemsss is not a necessary party to this action under Rule 19(a).

**B.**   **Even if Nemsss Were a Necessary Party, Defendants Have Failed to Demonstrate that it Is an Indispensable Party.**

Because Nemsss is not a necessary party, it cannot be an indispensable party. *S. Co. Energy Mktg., L.P.*, 190 F.R.D. at 189 (citing *Schlumberger Indus., Inc. v. Nat'l Surety Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1994) ("Only necessary persons can be indispensable, but not all

necessary persons are indispensable.")). Thus, the analysis ends there, and Defendants' Motion

must be denied.  Nevertheless, even if Nemsss were a necessary party, it is not "indispensable"

to the determination of the parties' rights and obligations here.

In determining whether a necessary party is an indispensable party, the Court considers

four factors articulated by Rule 19(b):  (1) whether a "judgment rendered in the person's

absence" would be prejudicial; (2) whether any such prejudice could be "lessened or avoided by:

(A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;" (3)

"whether a judgment rendered in the person's absence would be adequate;" and (4) "whether the

plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  This test

is "applied strictly, as 'courts are loath to dismiss cases based on nonjoinder of a party.'"

*Southern Company*, 190 F.R.D. at 189 (citation omitted).

Again, the determination of Gunvor's tort claims against Defendants for conduct within

the context of the JV is irrelevant to Nemsss.  Regardless of the ultimate determination of these

issues, Nemsss's rights and obligations under the Fuel Oil Contracts will not be affected.  Nor do

any of the Rule 19(b) factors require a finding that Nemsss is indispensable.

First, none of the Defendants would be prejudiced by Nemsss's absence.  *See* Fed. R.

Civ. P. 19(b)(1).  Defendants mistakenly claim that this action calls the validity of Nemsss's

contracts into question and deprives Nemsss of its contractual right to arbitrate disputes arising

under the Fuel Oil Contracts.  Mem. 10.  They are wrong because none of Gunvor's causes of

action arise out of or in connection with the Fuel Oil Contracts.  Gunvor seeks redress for

Defendants' fraudulent conduct in connection with the JV.  Thus, Nemsss's rights under the Fuel

Oil Contracts remain intact.  Although Gunvor could still sue Nemsss under the Fuel Oil

Contracts, based on potential issues related to the fuel oil sales, such as contamination to the fuel,

11

demurrage claims, etc., that is not the sort of prejudice that Rule 19(b) contemplates. *Cf. Southern Company*, 190 F.R.D. at 189.

Second, even if the Court were to find Nemsss would be prejudiced, it certainly could structure any judgment such that the judgment clearly relates only to claims among the existing parties and the JV.  *See* Fed. R. Civ. P. 19(b)(2).

Third, a judgment issued in Nemsss's absence would be adequate because Gunvor's claims relate exclusively to the existing parties' performance *vel non* of the JV and their dealings with one another.  *See* Fed. R. Civ. P. 19(b)(3).  Defendants claim that a judgment here would be inadequate because (1) an adverse judgment could lead the individual Defendants to bring indemnification actions against Nemsss in their capacity as corporate officers; and (2) if Gunvor had sued Nemsss for breach of the Fuel Oil Contracts, all of Gunvor's claims would have been resolved via arbitration.  *See* Mem. 10-11. While possibly true, these speculative arguments are irrelevant because Gunvor did not sue for breach of contract, and the individual Defendants are being sued in their individual capacities, not as officers of Nemsss.

Finally, Nemsss cannot be indispensable because Gunvor does not have an alternative forum in which to bring its claims, and thus, no adequate remedy if its claims are dismissed.  *See* Fed. R. Civ. P. 19(b)(4).  The JV between Gunvor and Defendants was never reduced to writing and does not have a dispute resolution provision.  In contrast, this Court has diversity jurisdiction over the dispute and personal jurisdiction over the Defendants (neither of which was challenged by Defendants).  *See* Compl. ¶¶ 17-21.  Under these circumstances, even if Nemsss were a necessary party, it would not be "indispensable" under Rule 19(b).

Thus, Gunvor respectfully submits that there is no basis upon which to conclude that the Court cannot "in equity and good conscience" allow the case to proceed without Nemsss as a

party. To the contrary, permitting the case to be dismissed on Defendants' incorrect assertion that

Gunvor's claims arise solely under the Fuel Oil Contracts and *speculation* that Gunvor could one

day file a claim against Nemsss which, in any event, would be legally and factually distinct from

those already at issue, is what should be avoided.

## II.     THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE PARTIES NEVER AGREED TO ARBITRATE.

### A.     <u>Standard of Review</u>

Defendants ask the Court to compel arbitration pursuant to the Federal Arbitration Act, 9

U.S.C. § 1 *et seq.* ("FAA").  Mem. 12. "[T]he standard for deciding a motion to compel

arbitration brought under the FAA, 9 U.S.C. § 4, is a standard similar to a motion for summary

judgment." *Erichsen v. RBC Capital Mkts., LLC*, 883 F. Supp. 2d 562, 566 (E.D.N.C. 2012).  To

prevail on a motion to compel arbitration, the movant must show "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

Defendants cannot meet their burden here.

A litigant can compel arbitration under the FAA, "if he can demonstrate (1) the existence

of a dispute between the parties, (2) a written agreement that includes an arbitration provision

which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by

the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the

defendant to arbitrate the dispute."  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir.

2002); *see also Loney v. State Collection Serv.*, No. 7:13-cv-247, 2014 U.S. Dist. LEXIS 13821,

at *1-2 (E.D.N.C. Jan. 31, 2014).  Here, there is no question that the parties have a dispute and

that there is a foreign commerce nexus. Critically, however, Defendants cannot show there was a

written agreement between the parties and, thus, there is no arbitration clause that covers

Gunvor's claims asserted in the Complaint.

> **B.**     <u>There Is No Express Agreement to Arbitrate Gunvor's Tort Claims Against</u>
> <u>Defendants.</u>

      Arbitration is "a matter of contract between the parties." *First Options of Chi., Inc. v.*

*Kaplan,* 514 U.S. 938, 943 (1995). Thus, "[a] party cannot be required to submit to arbitration

any dispute which he has not agreed to submit." *United Steelworkers of Am. v. Warrior & Gulf*

*Navigation Co.*, 363 U.S. 574, 582 (1960); *see also, e.g.*, *Weckesser v. Knight Enters. S.E., LLC*,

No. 17-1247, 2018 U.S. App. LEXIS 15751, at *6 (4th Cir. June 12, 2018) (citation omitted);

*Loney*, 2014 U.S. Dist. LEXIS 13821, at *4 (citing *Am. Recovery Corp. v. Computerized*

*Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996)). To determine whether the parties agreed

to arbitrate, courts apply state law principles governing contract formation. *Hightower v. GMRI,*

*Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (citation omitted). "Virginia contract law requires the

standard elements of offer, acceptance, and consideration for the formation of a valid contract."

*Hill v. Alstom Power, Inc.*, No. 3:13-cv-00496, 2013 WL 6408416, at *2 (E.D. Va. Dec. 6,

2013). Contract formation requires mutual assent of the parties, which "may be inferred from

the acts and conduct of the parties." *Durham v. Nat'l Pool Equip. Co.*, 138 S.E.2d 55, 58 (1964).

"[M]anifesting acceptance by engaging in activity explicitly recognized as such in the governing

contract provisions is sufficient to demonstrate assent under Virginia law." *Klein v. Verizon*

*Commc'ns, Inc.*, No. 1:12-cv-00757, 2017 WL 5071306, at *4 (E.D. Va. Aug. 9, 2017).

      Defendants' Motion to Compel also hinges upon the mistaken assumption that Gunvor's

claims arise in connection with the Fuel Oil Contracts. Mem. 12-17. Indeed, Defendants'

Memorandum focuses on the purported binding nature and broad scope of the arbitration

provisions therein. *Id*. Yet, that discussion sidesteps the real issue – namely, whether *Gunvor and Defendants* entered into an agreement containing an arbitration provision. And the answer to that is no. The arbitration clause in the Fuel Oil Contracts is inapplicable to Gunvor's claims against Defendants. Indeed, the plain language of each Fuel Oil Contract states that the contract is "the entire agreement *between the parties* and supersedes all previous negotiations, representations, agreements, or commitments with regard to *its subject matter*," *i.e.*, a one-time purchase and sale of fuel oil. *See* Declaration of Lawrence Kayablian ("Kayablian Decl."), Ex. 3, § 16, ECF No. 22-1. Thus, because this dispute relates to the JV, not the Fuel Oil Contracts, the arbitration clause cannot be invoked.

Indeed, Defendants' position contradicts the parties' intent: if Gunvor and Defendants intended to have disputes regarding the JV arbitrated, they could have reduced that understanding to writing. For this same reason, the cases upon which Defendants rely are inapposite because, in those cases, the agreement under which the claims at issue were being asserted itself provides for arbitration. *See* Mem. 13-15 (citing *Discover Bank v. Vaden*, 489 F.3d 594, 607 n. 20 (4th Cir. 2007) (subsequent history omitted); *Adkins*, 303 F.3d at 500; *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001); *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 656 (W.D. Va. 2017)). Accordingly, the Court must deny Defendants' alternative Motion to Compel.

### C. Gunvor Alleges Defendants Fraudulently Induced Gunvor to Enter into the Joint Venture, Not the Fuel Oil Contracts.

Defendants' position that Gunvor alleges it was fraudulently induced to enter into the *Fuel Oil Contracts* is completely at odds with the well-pleaded allegations in the Complaint. Mem. 15-17. Indeed, the Complaint specifically alleges that (1) "Defendants Lawrence and Arman knowingly made false statements to Gunvor regarding the volume of fuel available from

IOTC to induce Gunvor to enter into *a joint venture* with them," and (2) "[a]s a result of Defendants Lawrence and Arman's intent to fraudulently induce Gunvor into entering *the joint venture*, Gunvor suffered damages . . . ." Compl. ¶ 111.  Thus, while the FAA generally mandates referral of disputes to arbitration when there is a valid arbitration agreement between the parties, Gunvor has *not* alleged it was fraudulently induced to enter the Fuel Oil Contracts. Thus, Defendants' argument is without merit and must be denied.

### D. Defendants Cannot Avail Themselves of the Arbitration Clause in the Fuel Oil Contracts.

Governing law permits non-signatories to an arbitration agreement to avail themselves of arbitration and/or compel others to arbitrate only under narrow circumstances, none of which applies here.  At minimum, though, there must be allegations of "'coordinated behavior between a signatory and a non-signatory' defendant, and the claims against both the signatory and non-signatory defendants must be 'based on the same facts,' be 'inherently inseparable,' and 'fall within the scope of the arbitration clause.'" *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 374 (4th Cir. 2012).  Here, Gunvor's claims are based on Defendants' fraudulent conduct and misrepresentations, which induced Gunvor to enter the JV and caused Gunvor to suffer substantial damages.  Thus, Gunvor's claims do not fall within the scope of the arbitration clause in the Fuel Oil Contracts.

Moreover, in the Fourth Circuit, there are only five theories that may "provide a basis for binding non-signatories to arbitration agreements," none of which is applicable.  *See Schwabedissen Maschinent Anolgen GMBH v. Int'l Paper*, 206 F.3d 411, 417 (4th Cir. 2000). Those theories are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel.  *Id*. (quoting *Thomson-CSF, S.A. v. Am. Arb. Assoc*., 64 F.3d

773, 776 (2d Cir. 1995)); *Aggarao*, 675 F.3d at 374.  Defendants appear to rely solely on the

concept of agency as grounds to compel Gunvor to arbitrate, *see* Mem. 16-17 (citing *Pritzker v.*

*Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121 (3d Cir. 1993)); however, their

argument that, as officers of Nemsss, the individual Defendants are entitled to invoke the

arbitration clause in the Fuel Oil Contracts is conclusory.  A corporate or shareholder

relationship is not sufficient to bind a nonsignatory to an arbitration agreement – the purported

agent must show control and the existence of a valid arbitration agreement.  *See Long v. Silver*,

248 F.3d at 320; *Thomson-CSF*, 64 F.3d at 778.  Moreover, agency cannot "be proved solely by

the utterances of the purported agent." *Fleming v. Bank of Va.*, 343 S.E.2d 341, 345 (1986);

*Drake v. Livesay*, 341 S.E.2d 186, 188-89 (1986).  Thus, the contents of Lawrence Kayablian's

Declaration (ECF No. 22-1) are insufficient to establish agency and is irrelevant to the

determination of an agency relationship between Gunvor and Defendants.

Because Defendants failed to address any of other theories for applying an arbitration

clause to non-signatories, they have waived the right to argue that these theories apply.

Nevertheless, none of the other theories provides a basis to compel arbitration.  Defendants

cannot compel Gunvor to arbitrate on an incorporation by reference theory because there is no

contractual relationship between Gunvor and Defendants, let alone one that incorporates the

existing arbitration clause in the Fuel Oil Contracts.  *See Thomson-CSF.*, 64 F.3d at 778.

Assumption is inapplicable because there is no evidence that Gunvor has ever indicated that it

would be willing to arbitrate claims arising out of the JV.  *See id.*  And, Gunvor cannot be

compelled to arbitrate based on the veil piercing/alter ego theory because Defendants have not

produced evidence showing that the individual Defendants' relationship with Nemsss is

sufficiently close to justify piercing Nemsss's corporate veil.  *See id.*

III.     **THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE FUEL OIL CONTRACTS DO NOT BAR GUNVOR'S CLAIMS.**

Defendants completely miss the mark in arguing that the exculpatory and non-reliance clauses in the Fuel Oil Contracts bar Gunvor's claims against *Defendants*.  Mem. 17-19.  This argument fails because Defendants simply are not entitled to enforce the provisions of an agreement to which they were not parties and which did not give rise to Gunvor's claims.  Moreover, the exculpatory and non-reliance clauses in the Fuel Oil Contracts did not bar claims against *Defendants*.  And, even if they had purported to do so, the clauses are unenforceable.

A.       **The Exculpatory Clause in the Fuel Oil Contracts Does Not Preclude Gunvor's Claims.**

As an initial matter, Defendants have no right whatsoever to enforce any provisions of the Fuel Oil Contracts.  By their express terms, each of the contracts provided: "This contract is not intended to give any third party the right to enforce any of its terms."  *See, e.g.*, Kayablian Decl., Ex. 3, § 16.  Because the Defendants were not parties to the Fuel Oil Contracts, they cannot enforce the terms thereof.

Defendants' argument also fails for several other reasons.  First, the plain language of the Fuel Oil Contracts does not bar Gunvor's claims because the claims relate to Defendants' conduct within the context of the JV, *not the Fuel Oil Contracts*.  *See* Kayablian Decl. Ex. 3, § 16 (providing agreement is limited to terms agreed *between the parties*).

Second, the exculpatory clause in the Fuel Oil Contracts does not bar claims against *Defendants*.  The clause simply provides that each party agreed to limit its own liability in connection with the Fuel Oil Contracts.  *See, e.g.*, Kayablian Decl. Ex. 3, § 16 ("Each *party* further acknowledges that *it* . . . will not be liable in tort.") (emphasis added); *see also, e.g.*, *id.* § 17 (limiting liability of *seller* and *buyer* for indirect, consequential, and other damages).

18

Defendants rely on *Smith v. Purnell* in support of their argument that Gunvor's claims are barred, Mem. 18 (citing *Smith*, No. 1:11-cv-922, 2011 WL 6140868, at *6-7) (E.D. Va. Dec. 9, 2011), but, *Smith* is inapposite because the relevant contract – a settlement agreement with a third party – contained an express release of claims against the defendant. *Smith*, 2011 WL 6140868, at *6-7.   Conversely, nothing in the exculpatory clause suggests that it should operate as a release of claims against any of the Defendants. *See, e.g.*, *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623 (4th Cir. 1999) (citation omitted) (noting that court should be guided by plain meaning of contract).

Third, Defendants' assertion that Lawrence and Arman can invoke the exculpatory clause simply because they are officers of Nemsss, Mem. 20, is similarly unavailing.   Defendants contend that dismissal is required to avoid "nullifying" the protections Lawrence and Arman supposedly were granted through the exculpatory clause. *Id.*   This is a repeat of the flawed argument Defendants made regarding the arbitration clause, and is even less logical here.[4] Specifically, Defendants cite *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990), to support their position. *Arnold* held that a valid arbitration agreement between the plaintiff and a corporate defendant required arbitration of plaintiff's claims against non-signatory corporate officers because, otherwise, "the effect of the rule requiring arbitration would . . . be nullified." *Id.*   *Arnold* did not, however, indicate that an exculpatory clause concerning a principal automatically applies to the principal's agents.   Moreover, there is a fundamental difference between requiring a plaintiff to adjudicate its dispute against agents of a company in a particular

---

[4] *See* § II(D), *supra*; *see also* Restatement (Third) of Agency § 7.01 (citing *Whitt Sturtevant, LLP v. NC Plaza LLC*, 43 N.E.3d 19, 45 (Ohio Ct. App. 2015) (lease's exculpation clause not applicable to agent)).

forum and stripping a plaintiff of its right to adjudicate the dispute in the first place. Indeed, exculpatory clauses are disfavored and should not be read into a contract that is unambiguous on its face. *See Kocinec v. Pub. Storage, Inc.*, 489 F. Supp. 2d 555, 558-59 (E.D. Va. 2007) (citing *Nat'l Motels, Inc. v. Howard Johnson, Inc.*, 373 F.2d 375, 379 (4th Cir. 1967)). Here, because the exculpatory clause did not expressly cover officers or other agents of Nemsss, Defendants are not protected from liability merely because of their status as officers of Nemsss.

Finally, even if Defendants were covered by the exculpatory clause, it would be unenforceable. Although Virginia courts regularly enforce *valid* exculpatory agreements, parties to a contract may only exempt themselves from liability for negligence, not willful, intentional torts. *See Kocinec*, 489 F. Supp. 2d at 559; *All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 559-60 (W.D. Va. 2009). This is because "[a] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." Restatement (Second) of Contracts § 195 (1981). *See also All Bus. Sols.*, 629 F. Supp. 2d. at 559-60. Thus, because all of Gunvor's causes of action are intentional torts and allege that Defendants conspired to, and in fact did, defraud Gunvor, the exculpatory clause in the Fuel Oil Contracts is unenforceable. Accordingly, Gunvor's claims are not barred.

## B.     The Non-Reliance Clause in the Fuel Oil Contracts Does Not Preclude Gunvor's Fraud or Fraudulent Inducement Claims.

Defendants assert that Counts I and II are barred because Gunvor cannot prove the reasonable reliance required to state claims for fraud and fraudulent inducement in light of the non-reliance clause in the Fuel Oil Contracts. Mem. 20-21. Not so. First, Defendants have no right to invoke the non-reliance clause. *See* Kayablian Decl. Ex. 3, § 16. Second, Defendants' entire argument is misguided because the non-reliance clause does not disclaim reliance on

*representations made in connection with the parties' JV*.  *See Hitachi*, 166 F.3d at 631

(contractual disclaimers "that do not cover the allegedly fraudulent contract-inducing

representations" do not bar a fraud claim).  Third, even if it did, the non-reliance clause does not

bar Counts I- II because Gunvor reasonably relied to its detriment on Defendants'

representations in connection with the JV.

A "contractual disclaimer of reliance is not a prophylactic against a claim of fraud."

*Hitachi*, 166 F.3d at 630.  Although "contracting parties may . . . disclaim or limit certain

liabilities, a 'false representation of a material fact . . . on which the purchaser had a right to rely,

is always ground for . . . an action for damages." *Id.* (quoting *George Robberecht Seafood, Inc.*

*v. Maitland Bros. Co.* 255 S.E. 2d 682, 683 (Va. 1979)).  Therefore, notwithstanding a

contractual disclaimer of reliance, a defendant is liable for fraud or fraudulent inducement if the

plaintiff's reliance on his representations was both reasonable and justified.  *See Hitachi*, 166

F.3d at 628-31; *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 828-30 (4th Cir. 1999); *XL*

*Specialty Ins. Co. v. Truland*, No. 1:14-cv-1058, 2015 WL 925582, at \*4-5 (E.D. Va. Mar. 3,

2015).  Reliance is reasonable and justified if the relying party undertook a prudent investigation

into the representations upon which he relied, as well as if the defendant "threw him off guard"

or prevented him from learning necessary facts.  *See Hitachi*, 166 F.3d at 630-31; *Bank of*

*Montreal*, 193 F.3d at 830; *XL Specialty Ins. Co.*, 2015 WL 925582, at \*4-5.  Reliance may be

unreasonable if a party "specifically disclaimed reliance on the very representation now asserted

as fraudulent;" however, "a general waiver" is insufficient to bar a finding of reasonable reliance.

*Bank of Montreal*, 193 F.3d at 830.

Even if the Fuel Oil Contracts were relevant here (which they are not), they would have

no import because Gunvor never disclaimed reliance on any representations that *Defendants*

21

made in connection with the JV.  Indeed, the plain language of the non-reliance clause provides "Each party acknowledges that *in entering into this contract* it has not relied on any representations . . . except those which are expressly set out therein."  *See, e.g.*, Kayablian Decl. Ex. 3, § 16 (emphasis added).  Nor does the non-reliance clause contain anything other than a general waiver that is insufficient to render Gunvor's reliance unreasonable.

Next, the Complaint adequately alleges that Gunvor relied on Defendants' materially false representations and misstatements.  It alleges that, prior to entering the JV, Defendants provided, through Thompson, the investor teaser, the Amalgamated Presentation, and the IOTC/GEPS contract, which were substantially detailed, but (unbeknownst to Gunvor) contained false information or were completely fraudulent.  *See, e.g.*, Compl. ¶¶ 27-32, 80-84, 107-09, Ex. C-D.  These materials, along with affirmative misstatements by the individual Defendants concerning the volume of fuel oil available, induced Gunvor to agree to the JV.  *Id*. ¶¶ 34-39, 103, 110.  From Gunvor's perspective, the fact that H&P, a reputable investment bank, was backing the proposed JV lent credibility to Defendants' representations.  *Id*. ¶¶ 6, 15, 26.  Plus, Gunvor was not in a position to collect information about Nemsss's and GEPS' access to the Iraqi fuel market in order to verify Defendants' representations.  *See Hitachi*, 66 F.3d at 630 (plaintiff was "unable to discover the fraud by gathering information from outside sources").

Gunvor also alleged that, after agreeing to the JV, it repeatedly inquired about Defendants' compliance with the terms of the JV and Defendants (often through Thompson) either rebuffed them or responded with misinformation.  *See, e.g., id*. ¶¶ 51-52, 55-56, 61-63, 66, 71-75, 80, 100.  After accumulating evidence of potentially significant misuse of funds by Defendants, Gunvor requested explanations about the contents of the investor teaser, justifications for expenditures and wire transfers, and ultimately an audit of the transactions

22

underlying the JV.  *See id.* ¶¶ 66, 71-75, 80, 85-88, 100-102.  In response, Defendants cut-off

communications with Gunvor, thus making it impossible for Gunvor to undertake a full

investigation of the fraud.  *Id.* ¶ 89.  Thus, Gunvor has alleged that it reasonably relied on

Defendants' representations and Counts I and II state plausible claims for relief.[5]  In sum,

neither Gunvor's fraud nor its fraudulent inducement claim is barred by the non-reliance clause.

## IV.   THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE COUNTS III-VII OF THE VERIFIED COMPLAINT STATE PLAUSIBLE CLAIMS FOR RELIEF.

Defendants' Motion to Dismiss should be denied because Counts III-VII state plausible

claims for relief.  Defendants do not (and cannot) contest the sufficiency of Gunvor's pleading

with respect to the Complaint's tort counts.  Instead, their arguments hinge on the Fuel Oil

Contracts, which do not bar Gunvor's claims, and the economic loss doctrine, which does not

apply to Gunvor's claims.  Nor are Defendants' arguments regarding Gunvor's alter ego count

compelling because they overlook the individual Defendants' manipulation of Amira and other

companies in the Amira Group in order to perpetrate a fraud against Gunvor.

### A.   Standard of Review

A 12(b)(6) motion tests the sufficiency of a complaint and does not resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses.  *Cline-Thomas v.*

*Keels*, No. 2:13-cv-204, 2013 WL 12145815, at \*3 (E.D. Va. Sept. 23, 2013).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "When

---

[5] Defendants' sole arguments to dismiss Counts I and II were (1) the counts are barred by the non-reliance clause; and (2) Gunvor purportedly failed to plead reasonable reliance.  *See* Mem. 20-22. In limiting their argument, Defendants have waived any other argument in support of dismissal.  Rule 12(b)(6).  Nevertheless, the Complaint clearly states plausible claims.

reviewing the legal sufficiency of a complaint, the Court must accept "all well-pleaded allegations in the plaintiff's complaint as true" and draw "all reasonable factual inferences from those facts in the plaintiff's favor." *Parks, Millican & Mann, LLC v. Figures Toy Co.*, No. 2:16-cv-522, 2017 WL 5897901, at *2 (E.D. Va. Nov. 29, 2017).

**B.      Count III States a Plausible Claim for Conversion.**

Defendants' effort to dismiss Gunvor's conversion claim, Mem. 23, is flawed on two grounds.  First, Defendants misstate Virginia law.  The economic loss doctrine does not bar Gunvor's conversion claim because "[a] cause of action for conversion lies independent of an action in contract . . . ." *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344 (2003) (upholding jury's finding that defendant converted property of co-venturer).   As recognized in *Levinson v. Mass. Mut. Life Ins. Co*. No. 4:06-cv-086, 2006 WL 3337419, at *14 (E.D. Va. Nov. 9, 2006), "the economic loss rule does not obtain 'where the breach amounts to an independent, willful tort.'"  This Court has repeatedly held that conversion falls within that category of torts. *See, e.g.*, *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004) ("Like the duty not to defraud, the duty not to convert the property of another for one's own purposes is owed by everyone to everyone, and conversion therefore constitutes a willful, independent tort from the contract claims.").  Second, Gunvor alleged that Defendants facilitated a host of unauthorized expenditures of funds that it invested in the JV, including:  (1) wire transfers sent to entities *other than IOTC*; (2) payments made for "working capital," as well as "security costs, 'seed capital,' a performance bond, and landside costs" using funds that should have been used to purchase fuel oil (after Lawrence told Gunvor that they money was, in fact, used to purchase fuel oil); and (3) a series of vaguely described expenses, including for travel, entertainment, "supervision," and miscellaneous fees made with prepayment funds that also should have been used to purchase fuel

oil.  *See, e.g.*, Compl.  ¶¶ 64, 71, 75, 87.  It also alleged that Defendants repeatedly refused or

were unable to respond to Gunvor's requests for information about where its money was going,

both of which support Gunvor's claim that Defendants diverted its funds for purposes wholly

unrelated to the JV.  *See, e.g.*, Compl. ¶¶ 50, 63, 71-73, 75.  These allegations satisfy the

elements required to state a claim for conversion.  *See, e.g.*, *NorthStar Aviation, LLC v. Alberto*,

No. 1:18-cv-191, 2018 WL 3647119, at 7-8 (E.D. Va. July 31, 2018).  Accordingly, the Court

should deny Defendants' Motion as to Count III.

### C.      Count IV States a Plausible Claim for Unjust Enrichment.

The Fuel Oil Contracts do not automatically bar Gunvor's unjust enrichment claim.

While Defendants correctly note that the lack of an express contract *between the parties* is a

condition precedent to a claim for unjust enrichment, *see* Mem. 24; *see also Butts v. Weltman,

Weinberg & Reis Co., LPA*, No. 1:13-cv-1026, 2013 WL 6039040, at *3 (E.D. Va. Nov. 14,

2013), they fail to recognize that there was no express contract between Gunvor and Defendants.

Moreover, Gunvor is not barred from bringing a quasi-contract cause of action against

*Defendants* simply because it separately executed contracts for the purchase of fuel oil with

*Nemsss*.  *See Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 844 (E.D. Va. 2015).

Gunvor also has stated a claim for unjust enrichment.  Gunvor alleged that it made

substantial investments in the JV; that Defendants were aware of the investments Gunvor made

for the benefit of the JV; and that Defendants were unjustly enriched through their misuse of

some of the invested funds, including diverting Gunvor's funds for unauthorized purposes and

their own personal use.  *See, e.g.*, Compl. ¶¶ 50, 63-64, 71-75, 87.  *See also Butts*, 2013 WL

6039040, at *2 and *NorthStar Aviation*, 2018 WL 3647119, at *9.  Therefore, the Court should

deny Defendants' Motion as to Count IV.

**D.**    **Count V States a Plausible Claim for Constructive Fraud and Gunvor Requests that the Court Treat it as such Instead of as a Claim for Negligent Misrepresentation.**

Defendants maintain that Count V should be dismissed because Virginia does not recognize a cause of action for negligent misrepresentation, and even if it did, such a claim would be barred by the economic loss doctrine.  Mem. 24-25. However, this Court has evaluated allegations of negligent misrepresentation as claims for constructive fraud.  *See, e.g.*, *Design & Prod., Inc. v. Am. Exhibitions, Inc.*, 820 F. Supp. 2d 727, 742–43 (E.D. Va. 2011).  Therefore, Gunvor requests that the Court consider whether Count V states a claim for constructive fraud, or, in the alternative, permit Gunvor leave to amend Count V.

Gunvor has stated a claim for constructive fraud and it is not barred by the economic loss rule.  "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it."  *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (1994).  To state a claim for constructive fraud, a plaintiff must show that the defendant "innocently or negligently" made a "false representation of a material fact" and that the plaintiff "was damaged as a result of reliance upon the misrepresentation."  *Design & Prod., Inc.*, 820 F. Supp. 2d at 742.  Thus, the same facts that support Gunvor's fraud and fraudulent inducement claims also support the constructive fraud claim if Defendants' materially false representations were made negligently rather that intentionally.  *See* § III(B), *supra*.  And, constructive fraud claims are not barred by the economic loss doctrine because they stem from a duty imposed by tort law – *i.e.*, the "duty not to commit fraud."  *See Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990); *see also Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 489-90 (Va. 2010).

Thus, the Court should treat Count V as a claim for constructive fraud and deny

Defendants' Motion as to Count V.  Alternatively, if the Court is not inclined to do so, Gunvor

requests leave to amend to state a claim for constructive fraud.  *See JTH Tax, Inc. v. Whitaker*,

No. 2:07-cv-170, 2007 WL 2821830, at *3 (E.D. Va. Sept. 27, 2007).

### E.        Count VI States a Plausible Claim for Civil Conspiracy.

The sole argument Defendants make in support of their Motion to Dismiss Gunvor's

claim for civil conspiracy is that the claim fails because all of Gunvor's other tort claims also

fail.  Mem. 26.  Defendants do not contend that Gunvor failed to state a claim for civil

conspiracy, and therefore have waived such an argument.  In any event, the allegations in Count

VI state a claim for civil conspiracy because they show that the individual Defendants "agreed

and acted in concert with one another . . . to defraud Gunvor by inducing Gunvor to (1) enter the

informal JV and provide funds for the sale of fuel oil by using misstatements, misrepresentations,

and false documents . . . and (2) tortiously converting Gunvor's funds for their own use."  *See*

Compl. ¶ 129; *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d

443, 453 (E.D. Va. 2009).  Therefore, the Court should deny Defendants' Motion as to Count VI.

### F.        Count VII Establishes that the Defendants are Alter Egos of One Another
###            and, therefore, that Counts I-VI State Plausible Claims Against Amira.

Defendants' effort to disclaim Gunvor's alter ego allegations fails to appreciate that

"[n]atural persons can be the alter ego of a corporation and vice versa," *Flame S.A. v. Indus.*

*Carriers, Inc.*, 39 F. Supp. 3d 769, 785 (E.D. Va. 2014) (subsequent history omitted), and

therefore that Amira can be held liable for the wrongful acts of the individual Defendants.

Defendants also ignore Gunvor's allegation that the Lawrence and Arman defrauded Gunvor by

abusing the corporate form of entities within the Amira Group, including Amira.  Therefore, Defendants' Motion to Dismiss Count VII must fail.

Under Virginia law, courts may pierce the corporate veil if "(1) the corporation was the 'alter ego, alias, stooge, or dummy' of the other entity; and (2) 'the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *Oliver v. Omega Protein Inc.*, No. 3:10-cv-47, 2011 WL 1044403, at *5 (E.D. Va. Jan. 31, 2011).  Courts also recognize the concept known as "reverse veil piercing," and have held corporations and other business entities liable for the fraudulent acts of their owners and officers. *See, e.g.*, *Flame S.A.*, 39 F. Supp. 3d at 785; *Oliver*, 2011 WL 1044403, at *4; *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 580 S.E.2d 806, 810 (Va. 2003); *see also, A.G. Dillard, Inc. v. Stonehaus Constr., LLC*, No. 151182, 2016 WL 3213630, at *3 (Va. June 2, 2016) (unpublished).

There is no hard-and-fast rule regarding when a Court should pierce the corporate veil. The "general principle [is] that liability is imposed when doing so would achieve an equitable result." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013) (citation omitted).  Numerous factors guide this Court's decisions concerning alter ego liability, namely: "gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness." *Id.* at 544; *see also C.F. Trust*, 580 S.E.2d at 811.  "In applying these factors a court must focus on reality and not form, [on] how the corporation operated and the individual defendant's relationship to that operation." *Id.* None of these factors is determinative, but "the factor of injustice or fundamental unfairness is the most important in [the] analysis." *Flame S.A.*, 39 F. Supp. 3d at 788.

The Complaint alleged that Defendants are alter egos of one another.  Defendants

downplay allegations that the individual Defendants' dominated Amira and failed to observe

corporate formalities in connection with the parties' JV.  *See* Mem. 28 (referring to Compl.

¶¶ 11, 16, 20, 24, 43, 107, 133-43).  But these allegations present exactly the types of facts the

Court considers in an alter ego analysis, *e.g.*, that Lawrence and Amira share an address;

Lawrence and Arman own and control Amira, Nemsss, and other companies in the Amira Group;

the "officers, directors, operators, and owners of each of the entities in the Amira Group . . . are

the same and/or substantially the same;" Nemsss was stricken from the BVI corporate registry

after Gunvor discovered Defendants' fraud;[6] Thompson, acting as an agent for Defendants,

communicated with Gunvor on behalf of Amira using email accounts affiliated with Nemsss and

a different Amira Group company; and Thompson and a VP Amira Management sent Gunvor

copies of the (fraudulent) GEPS/Nemsss contract at Lawrence and Arman's instruction, in

connection with the parties' JV.  Compl. ¶¶ 11, 16, 20, 24, 43, 73, 107, 133-43.

Gunvor also alleged that Defendants used Amira Group companies, including Amira, to

defraud Gunvor.  The Complaint alleged that Thompson, while purporting to be an agent of

Amira, presented the false and fraudulent investor teaser and Amalgamated Presentation to

induce Gunvor to enter the JV, and forwarded the IOTC/GEPS contract, which Gunvor later

discovered was a sham.  *See id.* ¶¶ 26-32, 44-46, 82-84.  It further alleged that Thompson, while

acting as an Amira's agent, relayed misinformation about Defendants' compliance with the terms

---

[6] The Kayablian Declaration attached a certificate of good standing for Nemsss, presumably in response to this allegation.  *See* ECF No. 22-2.  The certificate does not show the time period in which Nemsss purportedly has been in good standing in the BVI.  Nor does the Declaration contest Gunvor's allegation that, as of May 31, 2017, Nemsss was *not* in good standing.  Therefore, it is plausible that Defendants could have attempted to make Nemsss judgment proof through intra-company transfers of Gunvor's money, including potentially transfers to Amira.

29

of the JV and their purported contracts with IOTC, solicited information from Gunvor for improper purposes, and made false statements about Defendants' use of Gunvor's funds, all at the individual Defendants' direction. *See id.* ¶¶ 42, 52, 55, 61-62, 72-73. And, Gunvor alleged that Defendants used the funds it invested for unauthorized expenditures and contrary to Defendants' express representations. *See* § IV(A), *supra*. These allegations show that it would be unjust to respect Amira's corporate form.

Finally, because Gunvor has stated plausible claims for fraud, fraudulent inducement, conversion, unjust enrichment, constructive fraud, and civil conspiracy, it has alleged the "independent predicate tort[s]" required to find alter ego liability. Accordingly, the Court should determine that Defendants are alter egos of one another, and that Counts I-VI state plausible claims for relief against Amira.

## CONCLUSION

For the foregoing reasons, the Court should deny both Defendants' Motion to Dismiss the Verified Complaint and its alternative Motion to Compel Arbitration in their entirety.

Dated:  September 28, 2018

*/s/ Kierstan L. Carlson*
Kierstan L. Carlson (VA Bar No. 81939)
Carlson@blankrome.com
BLANK ROME LLP
1825 Eye Street NW
Washington, DC 20006
Tel:  202-420-2200
Fax:  202-420-2201
*Counsel for Plaintiff Gunvor SA*

Of Counsel:
William R. Bennett, III*
Lauren B. Wilgus*
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
*Admitted pro hac vice*

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 28th day of September 2018, a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration, was served electronically through the Court's CM/ECF system.

*/s/ Kierstan L. Carlson*
Kierstan L. Carlson (VA Bar No. 81939)
Carlson@blankrome.com
BLANK ROME LLP
1825 Eye Street NW
Washington, DC 20006
Tel:  202-420-2200
Fax:  202-420-2201
